UNITED STATES DISTRICT COURT
DISTRICT OF MASSECHUSSETTS

KENT GARVEY, on behalf of himself and all )
others similarly situated,                )
                                           )
         Plaintiff(s),                     )   MAGISTRATE JUDGE _____
                                           )
                                           )
                                           )   CLASS ACTION
                                           )   CIVIL ACTION NO.:
JAMES ARKOOSH, SAMUEL BELZBERG, )
PETER KLEIN and DIOMED HOLDINGS,  )
INC.,                                      )   RECEIPT # _____
                                           )   AMOUNT $ _____
                                           )   PLAINTIFFS DEMAND A TRIAL BY JURY
         Defendants.                       )   SUMMONS ISSUED _____
                                           )   LOCAL RULE 4.1 _____
                                           )   WAIVER FORM _____
                                               MCF ISSUED _____
                                               BY DPTY. CLK. _____
                     **COMPLAINT**              DATE _____

Plaintiffs, by their counsel, for their class action complaint allege upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, based upon an investigation by their counsel that included a review of the publicly available documents and news releases of Diomed Holdings, Inc.

**INTRODUCTION AND OVERVIEW**

1. This is a class action brought on behalf of those persons (the "Class") who acquired the common stock of Diomed Holdings, Inc. ("Diomed" or the "Company") during the period from February 1, 2002 through and including March 21, 2002 (the "Class Period"). Plaintiffs allege that each of the defendants ("Defendants") breached their fiduciary duty to plaintiffs. In addition, the plaintiffs allege violations against all defendants ("Defendants") of Section 10b of the

Securities Exchange Act of 1934. Plaintiffs' claims arise out of the Defendants' manipulation of the market price of Diomed stock during the Class Period.

2. Diomed is a publicly traded company that develops and sells equipment for photodynamic therapy and endovenous laser treatment, for use in the treatment of cancer and varicose veins, respectively.

3. Defendants knowingly and intentionally caused the artificial inflation of Diomed stock, by improperly influencing stock analysts to promote the purpose of the company's stock.

4. During the Class Period, Defendants knowingly and intentionally failed to disclose the fact that Defendants have, either directly or through another party, improperly compensated analysts to promote Diomed stock.

## JURISDICTION AND VENUE

5. This action arises under state law common law and Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

6. The Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the wrongs alleged in this complaint occurred in substantial part in this District, including the preparation and dissemination of materially false and misleading statements to the investing public. Diomed maintains its principal places of business in this District in Andover, Massachusetts.

8. In connection with the acts, transactions and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of national securities exchanges and markets.

2

## CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the Class defined above. Excluded from the Class are the defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Diomed, any of their subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, as well as the legal representatives, heirs, successors and assigns of any excluded person.

10. While the exact number of Class members is unknown and can only be ascertained through appropriate discovery, plaintiffs believe there are thousands of them. Joinder of all Class members is impracticable. Furthermore, because the damages suffered by the Individual Class members may be relatively small, the expense and burden of Individual litigation make it impossible for the Class members individually to redress the wrongs done to them.

11. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Class are:

    a) whether the federal securities laws were violated by Defendants' acts as alleged herein;
    b) whether the Individual Defendants are "control persons" within the meaning of the federal securities laws;
    c) whether Diomed and the Individual Defendants made false and misleading statements during the Class Period;
    d) whether the Individual Defendants breached their fiduciary duties to the plaintiff class;
    e) whether the market prices of Diomed securities during the Class Period were artificially inflated as a result of the conduct alleged in this complaint; and
    f) whether Plaintiffs and the other members of the Class have sustained damages and, if so, the proper measure of those damages.

12. Plaintiffs' claims are typical of the claims of other Class members. Plaintiff and the other Class members sustained damages arising out of Defendants' wrongful conduct.

13. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

14. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

15. The names and addresses of purchasers of Diomed stock are available from Diomed's transfer agent. Notice can be provided to such record owners via first class mail using technique and form of notice similar to those customarily used in class actions.

## THE PARTIES

16. Plaintiff Kent Garvey, a resident of King County, Washington, purchased shares of Diomed stock in reliance on Defendants' misrepresentations during the Class Period and was damaged thereby. A copy of plaintiff's certification executed pursuant to the PSLRA is attached to the Complaint as Exhibit A.

17. Defendant Diomed is a Delaware corporation with its principal executive offices and place of business at 1 Dundee Park, Andover, Massachusetts 01810. Diomed develops and markets products primarily designed for: 1) cancer and pre-cancer treatments using Photo Dynamic Therapy ("PDT"), and 2) greater saphenous vein reflux treatment and other clinical applications using Endovenous Laser Treatment ("EVLT").

18. Defendant James Arkoosh was the Non-Executive Chairman of Diomed Board of Directors at all relevant times herein. Because of Arkoosh's position within Diomed and his participation in the drafting of the Registration Statements, quarterly and annual SEC filings, press releases and material published on the Diomed website, he knew or was reckless in not

knowing of the misleading and adverse material information contained in, and omitted from, the Registration Statements, other SEC filings, press releases and Diomed website.

19. Defendant Samuel Belzberg was a director of Diomed at all relevant times herein. The Belzberg family made a name for itself in the 1980s by teaming up with Texas oilman and corporate raider T. Boone Pickens Jr. and financier Drexel Burnham Lambert Inc. in some of that decade's major takeover battles. Belzberg once specialized in buying up large blocks of stocks and getting companies to effectively pay greenmail to avoid the threat of a hostile takeover. The Belzbergs were sued by the SEC in 1986 for stock parking and were forced to disgorge $2.7 million in profits from the attempted but failed takeover of Ashland Oil Inc. The Belzbergs were accused of parking stock with Bear Stearns & Co. to avoid disclosing their stake in Ashland, later selling back the stock to Ashland Oil at a profit. A district court ruling against the Belzbergs in that case was upheld in 1989 by the U.S. Court of Appeals. On May 14, 2001, Belzberg purchased options to purchase 50,000 shares of Diomed's common stock at an exercise price of $1.25 per share. Because of Belzberg's position within Diomed and his participation in the drafting of the Registration Statements, quarterly and annual SEC filings, press releases and material published on the Diomed website, he knew or was reckless in not knowing of the misleading and adverse material information contained in, and omitted from, the Registration Statements, other SEC filings, press releases and Diomed website.

20. Defendant Peter Klein was a Director, President and Chief Executive Officer of Diomed at all relevant times herein. Upon information and belief, Klein approved the contract between Diomed and Versus, by which Diomed made payments to Versus for "consulting work". Because of Klein's position within Diomed and his participation in the drafting of the Registration Statements, quarterly and annual SEC filings, press releases and material published on the

Diomed website, he knew or was reckless in not knowing of the misleading and adverse material information contained in, and omitted from, the Registration Statements, other SEC filings, press releases and Diomed website.

21. Defendants Arkoosh, Belzberg, and Klein, are collectively referred to herein as the "Individual Defendants").

22. Defendants are liable, jointly and severally, as direct participants in and co-conspirators of, the wrongs complained of herein.

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS

23. Beginning in January 2002, Defendants embarked on a plan to artificially inflate the market price of Diomed stock by improperly influencing various stock analysts to promote the purchase of Diomed stock without disclosing that such analysts' opinions were bought and paid for by Defendants.

24. The statements made by these stock analysts about the Company were misleading to Plaintiffs and the market because Defendants never disclosed the material fact that the analysts were paid either directly or indirectly by Diomed and or its directors to praise and promote Diomed's products, services, and prospects for growth all in an effort to induce Plaintiffs to purchase and retain Diomed stock.

25. In February of 2002, stock analyst Larry H. Abraham released an insider report[1] titled "Special Situation Report: Diomed: Portrait of a Biotech Winner," giving Diomed a glowing review and a strong BUY recommendation: "BUY Diomed, Inc. and do it now . . . I can tell you without reservation that the company mentioned earlier, Diomed, Inc. meets every criteria that I have developed and paid dearly to refine. It has the science, the people, the money and a great

---

[1] The report was produced by a Florida business called Catalyst Communications ("Catalyst").

6

business model, plus a timeline for profitability that is here and now, not 15 years or even five years from now."

26. Defendants never disclosed, however, the fact that Larry Abraham had been hired by Diomed to write the report.

27. In addition Defendants paid other analysts to promote Diomed stock. These included:

- James Stock's Stock Tips: "We have a new year, and a fresh and dynamic growth opportunity to enter the stock market with. ENTER DIOMED!" [emphasis in original];
- Stockwatch: The Guide to Businesses with Extraordinary Potential: "This Virtually Unknown Medical Company is Poised to Make Huge Profits, for Itself, and for Fortunate Investors Who Get in Early!"

28. The stock promotions outlined above were all paid for by Diomed. Some or all of the payments were made by Diomed through Verus – a major shareholder of Diomed that provides Diomed with advice and assistance on various matters. James Arkoosh, the Chairman of Diomed Board of Directors, is also the COO of Verus. Defendants had full knowledge of the fact that Diomed had paid for the stock recommendations by Larry Abrahams, Stockwatch, James Stock, and numerous other newsletters.

29. Had the Individual Plaintiffs known that the analysts were being paid by Diomed to praise and promote its products, services, and prospects for growth, they would not have bought or retained Diomed common stock based on such a recommendation. Due to the improper monetary influences imposed upon these analysts by Diomed and/or its directors, the analysts' reports on Diomed could not be deemed fair and impartial. Defendants' failure to disclose this material fact directly misled Plaintiffs into relying upon the mistaken assumption that the analysts' reports were fair and impartial in purchasing and retaining Diomed stock, causing the stock to be artificially inflated.

30. These misstatements and omissions on the part of Defendants caused the Diomed stock to be artificially inflated up to a high of $9.00 per share during February of 2002, when Diomed made its debut on the AMEX. Since then the stock price has dwindled precipitously, trading at $0.35 per share recently.

## DIOMED STOCK WAS TRADED ON AN EFFICIENT MARKET

31. During the Class Period Diomed common stock was traded in an efficient market.

32. Plaintiffs may rely on the fraud on the market theory in proving that the Class, and the market generally, relied on the above-described false and misleading statements regarding Diomed. As a result, the Diomed common stock was artificially inflated at the time it debuted on AMEX and remained inflated at all times during the Class Period.

33. The plaintiff Class paid an inflated price for the Diomed shares because the market price of the stock was artificially high during the Class Period as a result of the above described misrepresentations and omissions.

## COUNT I

### AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY

34. Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

35. Each of the Individual Defendants as officers and directors of Diomed stood in a fiduciary capacity towards plaintiffs; had a fiduciary duty to act fairly towards shareholders and not sacrifice the best interests of Diomed shareholders for the Individual Directors' personal gain. Furthermore, as officers and directors of Diomed the Individual Defendants had a duty of loyalty, good faith and fair dealing which the Individual Defendants owed to each Diomed shareholder.

36. By virtue of the above-described conduct, each Individual Defendant has breached his fiduciary duty to plaintiffs and the Class.

37. Plaintiffs and the Class have suffered damages as a direct result of the Individual Defendants breach of fiduciary duty evidenced by the drop in the price of Diomed shares directly resulting from the Individual Defendants wrongful actions.

38. By reason of the conduct alleged above, the Individual Defendants are liable for the aforesaid breach of fiduciary duty, and are liable to plaintiffs and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Diomed common stock during the Class Period.

## COUNT II

### AGAINST ALL DEFENDANTS FOR VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 OF THE SECURITIES AND EXCHANGE COMMISSION

39. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

40. This Count is asserted against Defendants Diomed, and the Individual Defendants and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

41. During the Class Period, Defendants Diomed and the Individual Defendants, singly and in concert, directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon plaintiffs and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiffs and the other members of the Class. The purpose and effect of said scheme, plan, and unlawful course of conduct was,

among other things, to induce plaintiffs and the other members of the Class to purchase Diomed common stock during the Class Period at artificially inflated prices.

42. Throughout the Class Period, Diomed acted through the Individual Defendants, the Company's officers and directors. The willfulness, motive, knowledge, and recklessness of the Individual Defendants are therefore imputed to Diomed, rendering the Company primarily liable for the securities law violations of these Defendants committed while performing in their official capacity as Company representatives. In the alternative and additionally, Diomed is liable for the acts of the Individual Defendants under the doctrine of respondent superior.

43. Defendants had an affirmative duty to disclose fully the truth regarding the misrepresentations and omissions delineated above. Defendants' knowing and intentional failure to do so was a conscious violation of the securities laws.

44. As a result of the failure to disclose material facts, the information that Defendants Diomed and the Individual Defendants disseminated to the investing public was materially false and misleading as set forth above, and the market price of Diomed common stock was artificially inflated during the Class Period. Plaintiffs and the Class relied on the above-described false and misleading statements in purchasing Diomed shares during the Class Period. In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said Defendants, Plaintiffs and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Diomed common stock. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

45. Plaintiffs and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

46. Diomed is directly liable for acts and omissions of Arkoosh and Belzberg under the doctrine of respondeat superior.

47. By reason of the foregoing, Defendants Diomed and the Individual Defendants directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes, and artifices to defraud; (b) failed to disclose material information; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon plaintiffs and the other members of the Class in connection with their purchases of Diomed common stock during the Class Period.

## COUNT III

### AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT

48. Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

49. Each of the Individual Defendants, by virtue of their management positions, directorships, stock ownership and/or specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the 1934 Act.

50. The Individual Defendants had the power and influence and exercised the same to cause Diomed to engage in the illegal conduct and practices complained of herein.

51. By reason of the conduct alleged in Count II of the Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct, and are liable to plaintiffs and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Diomed common stock during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

a. Declaring this action to be a proper plaintiff class action maintainable pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs to be proper representatives of the Class;

b. Awarding Plaintiffs and other members of the Class damages together with interest thereon;

c. Awarding Plaintiffs and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d. Awarding Plaintiffs and the members of the Class such other and further relief as may be just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs hereby demand trial by jury of all issues.

DATED: March 3, 2004

Counsel for Plaintiffs,

_____
Scott P. Lopez, BBO# 549556
Law Office of Scott P. Lopez
24 School Street, 8th Floor
Boston, Massachusetts 02108
Telephone: (617) 742-5700
Facsimile: (617) 742-5715
lopez@lopezlaw.com

Laurence Rosen
The Rosen Law Firm, P.A.
350 Fifth Avenue, Suite 5508
New York, NY 10001
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com