## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Kent Garvey, on behalf of himself and all others similarly situated, | Master File No. 1:04-cv-10438 (RGS) |
| Plaintiff(s), | Memorandum of Law in Support of Second Motion to Reconsider Motion to Appoint Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Counsel |
| James Arkoosh, Samuel Belzberg, Peter Klein and Diomed Holdings, Inc., | CLASS ACTION |
| Defendants. | |

## **INTRODUCTION**

Plaintiffs Kent Garvey, Albert Overhauser, James T. Marsh, Roger E. Buck, and Thomas Loveless ("Movants") respectfully submit this memorandum of law in support of this Second Motion to Reconsider the Motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Kent Garvey, Albert Overhauser, James T. Marsh, Roger E. Buck, and Thomas Loveless as Lead Plaintiffs for the Class of all purchasers of common stock of Diomed Holdings Inc. ("Diomed" or the "Company") during the period from February 1, 2002 through and including March 21, 2002, inclusive (the "Class Period"), and

(b) approving the selection of The Rosen Law Firm P.A. as Lead Counsel and the Law Office of Scott P. Lopez as Liaison Counsel for the Class.

This motion is made on the grounds that Movants are the most adequate plaintiffs, as defined by the PSLRA and is supported by the Declaration of Laurence Rosen dated July 23, 2004 with attached Exhibits A-F.[1]

## BACKGROUND

This putative class action is on behalf of all purchasers of Diomed common stock during the period from February 1, 2002 through and including March 21, 2002. *See* Complaint captioned <u>Kent Garvey v. James Arkoosh</u>, et al., 1:04-cv-10438 (RGS) (the "Complaint") at ¶1 attached as Exhibit A to the Rosen Decl.

Defendant Diomed is a Delaware corporation with its principal executive offices and place of business at 1 Dundee Park, Andover, Massachusetts 01810. Diomed develops and markets products primarily designed for: 1) cancer and pre-cancer treatments using Photo Dynamic Therapy ("PDT"), and 2) greater saphenous vein reflux treatment and other clinical applications using Endovenous Laser Treatment ("EVLT"). Complaint ¶2. This action arises under state common law and Sections 10(b) and 20 of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder. Complaint ¶¶1, 5.

Plaintiff in this action alleges that Defendants knowingly and intentionally caused the artificial inflation of Diomed stock, by improperly influencing stock analysts to praise and promote the company and the value of its stock. Specifically, Defendants knowingly and intentionally failed to disclose the fact that Defendants have, either directly or through another party, improperly compensated analysts to promote Diomed stock. The complaint further alleges that certain analysts were secretly paid by Diomed either

---

[1] References to the "Rosen Decl., Ex. " are to the exhibits attached to the accompanying Declaration of Laurence Rosen dated July 23, 2004 and submitted herewith.

directly or through Verus International (a major shareholder of Diomed that provides
Diomed with advice and assistance on various matters), such that the analysts' strong
BUY recommendations on Diomed stock could not be deemed fair and impartial. A
compelling privity between Verus and Diomed is established by the fact that James
Arkoosh, Chairman of Diomed Board of Directors, is also the Chief Operating Officer of
Verus. Complaint ¶¶23-29. As a result of this misconduct, Plaintiffs were misled into
purchasing the Diomed stock based on the improper recommendations provided in the
analysts' reports, causing the Diomed stock to be artificially inflated up to a high of $9.00
per share during February of 2002 when Diomed made its debut on the AMEX. Since
then, the stock price has dwindled precipitously, trading at about $0.20 per share on
March 3, 2004, the date the Complaint was filed in this matter. *See* Rosen Decl. Ex. D.

## ARGUMENT

## I. THE MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of
Lead Plaintiffs in class actions brought under the Act. The PSLRA directs courts to
consider any motion to serve as Lead Plaintiff filed by class members in response to a
published notice of class action by the later of (i) 60 days after the date of publication, or
(ii) as soon as practicable after the Court decides any pending motion to consolidate. 15
U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate
plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion
> in response to a notice . . .;

> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, the Movants satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should each be appointed a Lead Plaintiff.

*A.    Notice has Been Properly Published and Movants are Motivated to Serve as Class Representatives*

On March 19, 2004, The Rosen Law Firm P.A., as counsel in the first filed action against Diomed, caused a notice to be published in Investors Business Daily pursuant to Sections 21D(a)(3)(A)(i) of the PSLRA announcing that a securities class action had been filed against the defendants herein, and advising purchasers of Diomed common stock that they had sixty days from the date of the notice to file a motion with the Court to be appointed as Lead Plaintiff. *See* Rosen Decl. Exhibit B. Federal Courts have found that publishing a notice in Investors Business Daily complies with the notice requirements of Sections 21D(a)(3)(A)(i). Lax v. First Merchants Acceptance Corp., 1997 WL 461036, at *6 (N.D. Ill. Aug. 11, 1997) (The likelihood of a First Merchants' investor actually seeing a notice in the *Investor's Business Daily* "is arguably as great as finding such information by skimming the back pages of the *Wall Street Journal.*") *citing*, Greebel v. FTP Software, Inc., 939 F. Supp. 57, 63 (D. Mass. 1996); *see also*, Seamans v. Aid Auto Stores, Inc. Fed. Sec. L. Rep. P 90, 902 *4  (E.D.N.Y. 2000).

The Movants have filed the instant motion pursuant to the Notice and have attached Movants' Certifications attesting that they are members of the putative class, are each willing to serve as a representative of the Class, and are willing to provide testimony at deposition and trial, if necessary. *See* Rosen Decl. Exhibits C1-C5. Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs for the Class.

B.      *The Movants Have The Largest Financial Interest in the Action*

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *See* Howard Gunty Profit Sharing Plan v. CareMatrix Corp., 2000 WL 33348124, at *1 (Aug. 15, 2000 D. Mass.); Coggins v. New England Patriots Football Club, Inc., 492 N.E.2d 1112, 1120-1121 (Mass. 1986). *See also* In re Donkenny, Inc. Sec. Lit., 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

Proposed Lead Plaintiff Kent Garvey purchased 500 shares of Diomed stock during the Class Period with a total value of $2,595 on the date of purchase, and $2,495 in resulting losses as of the date of the Complaint, based on a market price of $0.20 on March 3, 2004. [2] Rosen Decl. Ex. C1. Proposed Lead Plaintiff Albert Overhauser purchased 1,000 shares of Diomed stock during the Class Period with a total value of $7,700 on the date of purchase, and $7,400 in resulting losses when he sold his stock at $0.30 on November 4, 2003. Rosen Decl. Ex. C2. Proposed Lead Plaintiff James T. March purchased and held 100 shares of Diomed stock during the class period, with a

_____

[2] The losses suffered by Movants are not the same as their legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses can, however, be determined from the certifications required under Section 21D of the Exchange Act (Rosen Decl. Ex.C1-C5) and based upon reference to information concerning the current market for the Company's securities as set forth in the Rosen Decl. Ex. D.

total value of $800 at the time of purchase, and $780 in resulting losses as of the date of

the Complaint. Rosen Decl. Ex. C3. Proposed Lead Plaintiff Roger E. Buck purchased

and held 150 shares of Diomed stock during the Class Period, with a total value of $1,050

at the time of purchase, and $1,020 in resulting losses as of the date of the Complaint.

Rosen Decl. Ex. C4. Proposed Lead Plaintiff Thomas Loveless purchased and held 700

shares of Diomed stock during the Class Period, with a total value of $4,517 at the time

of purchase, and $4,377 in resulting losses as of the date of the Complaint. Rosen Decl.

Ex. C5. In total, the proposed Lead Plaintiffs purchased $16,662 worth of Diomed stock

and suffered aggregate losses of $16,072.

Movants are not aware of any other plaintiff seeking to act as lead plaintiff herein

who has suffered larger losses. In fact, no other person has moved to be appointed lead

plaintiff in this action. Accordingly, Movants satisfy the largest financial interest

requirement to be appointed as Lead Plaintiffs for the Class.

C.      *The Movants Satisfy the Requirements of Rule 23 of the Federal Rules of Civil*
        *Procedure*

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to

possessing the largest financial interest in the outcome of the litigation, the Lead

Plaintiffs must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of

Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if

the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact
> common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses
> of the class, and (4) the representative parties will fairly
> and adequately protect the interests of the class.

6

In making its determination that the Lead Plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a prima facie showing that the Movants satisfy the requirements of Rule 23 is sufficient. *See* <u>Greebel v. FTP Software</u>, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). The class is defined as all purchasers of common stock of Diomed stock during the period from February 1, 2002 through and including March 21, 2002. Complaint ¶¶1, 9. The Complaint alleges that the Class is sufficiently numerous, consisting of thousands of investors, though the precise number is unknown at this time. Complaint ¶9. Moreover, of the four prerequisites to class certification, only two -- typicality and adequacy -- -directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. <u>In re Oxford Health Plans, Inc. Sec. Lit.</u>, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) *citing* <u>Gluck v. Cellstar Corp.</u>, 976 F. Supp. 542, 546 (N.D. Tex. 1997) *and* <u>*Fischler v. Amsouth Bancorporation*</u>, 176 F.R.D. 583 (M.D. Fla. 1997)); <u>In re Olsten Corp. Sec. Lit.</u>, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).

Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See* <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be

7

no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See* Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. Phillips v. Joint Legislative Comm. on Performance & Expenditure Review, 637 F.2d 1014, 1024 (5th Cir. 1981).

Movants satisfy the typicality requirement because, just like all other Class members, they: (1) purchased Diomed shares during the Class Period; (2) are entitled to a presumption of reliance on the alleged misleading information, as are all members of the Class (Complaint ¶32) ; and (3) suffered damages thereby.

The Movants, having purchased Diomed stock during the Class Period share numerous similar questions of law and fact with the members of the class and their claims are typical of the members of the class. The Movants and all members of the class allege that defendants violated the Exchange Act by publicly disseminating false and misleading statements regarding Diomed business and omitted material information concerning the stock analysts' recommendations of Diomed stock. Movants, as did all of the members of the Class, purchased Diomed shares at prices artificially inflated by Defendants' misrepresentations and omissions and were damaged thereby. Complaint ¶¶23-29. These shared claims also satisfy the requirement that the claims of the

representative parties be typical of the claims of the class. Thus, Movants claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the class to the existence of any conflicts between the interest of Movants and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (lst Cir. 1985)).

Here, Movants are adequate representatives of the class. As evidenced by the injuries suffered by Movants, who purchased Diomed shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Movants are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movants interests and those of the other members of the class. Further, Movants have taken significant steps which demonstrate they will protect the interests of the class: they have retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Movants' proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants prima facie satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

Thus, the close alignment of interests between the Movants and other Class members, as well as the strong desire of the proposed Lead Plaintiffs to prosecute these actions on behalf of the Class, provide ample reasons to grant the Movants' Motion to Serve as Lead Plaintiffs.

D.    *The Movants Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses*

The presumption in favor of appointing the Movants as Lead Plaintiffs may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (a)    will not fairly and adequately protect the interest of the class; or

> (b)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The Movants' ability and desire to fairly and adequately represent the Class have been discussed in Section C, *supra*. The Movants are not aware of any unique defenses defendants could raise against them that would render any Movants inadequate to represent the Class. Accordingly, the Court should appoint Movants as Lead Plaintiffs for the Class.

## II. THE MOVANTS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiffs to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiffs' selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants have selected The Rosen Law Firm as Lead Counsel and the Law Office of Scott P. Lopez as Liaison Counsel. The Rosen Law Firm is responsible for the initial investigation of the claims that form the basis of the class action. The Rosen Law Firm has been actively researching the class plaintiffs' claims - interviewing potential witnesses, reviewing financial and legal documents, seeking relevant data from third parties, and gathering other information that have formed the foundation of the claims against Defendants. Furthermore, the Rosen Law Firm and the Law Office of Scott P. Lopez are both experienced in the area of securities litigation and class actions, and have successfully prosecuted securities litigation and securities fraud class actions on behalf of investors. Thus, Movants' counsel has the skill and knowledge needed to prosecute this action effectively and expeditiously. *See* Rosen Decl. Exhibits E and F. Thus, the Court may be assured that by approving the Movants' selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Movants respectfully request the Court issue an Order (a) appointing Kent Garvey, Albert Overhauser, James T. Marsh, Roger E. Buck, and Thomas Loveless as Lead Plaintiffs of the Class, and (b) approving The Rosen Law Firm P.A. as Lead Counsel and the Law Office of Scott P. Lopez as Liaison Counsel. DATED: July 23, 2004

Respectfully submitted,

LAW OFFICE OF SCOTT P. LOPEZ

Scott P. Lopez, BBO# 549556
Tara Swartz, BBO# 652600
Law Office of Scott P. Lopez
24 School Street, 8th Floor
Boston, Massachusetts 02108
Telephone: (617) 742-5700
Facsimile: (617) 742-5715
lopez@lopezlaw.com

Proposed Liaison Counsel for Plaintiffs

THE ROSEN LAW FIRM, P.A.
Laurence Rosen
The Rosen Law Firm, P.A.
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com

Proposed Lead Counsel for Plaintiffs

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify, upon information and belief, that prior to filing the within motion Laurence Rosen conferred with defendant's counsel Charles W. McIntyre, by telephone on July 22, 2004 and attempted in good faith to resolve or narrow the issues contained herein.

Tara M. Swartz

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2004, I caused to be served, by first-class mail, postage prepaid, a copy of the foregoing document to all other attorneys of record in this case.

Tara Swartz