# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSSETTS

|  |  |
|---|---|
| Kent Garvey. Albert Overhauser, James T. Marsh, Roger E. Buck, and Thomas Loveless, on behalf of himself and all others similarly situated, <br><br> Plaintiff(s), <br><br><br> James Arkoosh and Diomed Holdings. Inc., <br><br> Defendants. | Master File No. 04-CV-10438 (RGS) <br><br><br> AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF SECURITIES LAWS <br><br> CLASS ACTION <br><br> Plaintiffs Demand a Trial by Jury |

Plaintiffs, by their counsel, for their class action complaint allege upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, based upon an investigation by their counsel that included interviews of individuals with personal knowledge of facts alleged herein, and a review of the publicly available documents, news articles. and news releases of Diomed Holdings, Inc.

## INTRODUCTION AND OVERVIEW

1.  This is a class action lawsuit brought on behalf of those persons (the "Class") who acquired the common stock of Diomed Holdings, Inc. ("Diomed" or the "Company") during the period from February 14, 2002 through and including March 21, 2002 (the "Class Period"). Plaintiffs allege violations against all defendants ("Defendants") of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Plaintiffs' claims arise out of the Defendants' manipulation of the market price of Diomed stock during the Class Period.

2.  Diomed is a publicly traded company that develops and sells equipment for photodynamic therapy and endovenous laser treatment, for use in the treatment of cancer and varicose veins, respectively.

3.  Defendants knowingly and intentionally engaged in deceptive acts and practices in causing the artificial inflation of Diomed stock, by improperly compensating stock analysts to promote the purchase of the company's stock.

4.  During the Class Period, Defendants knowingly and intentionally failed to disclose the fact that Defendants have, either directly or through another party, secretly paid stock analysts to praise and promote Diomed stock in an effort to artificially inflate the market price of Diomed common stock.

## JURISDICTION AND VENUE

5.  This action arises under Sections 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

6.  The Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

7.  Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the wrongs alleged in this complaint occurred in substantial part in this District, including the preparation and dissemination of materially false and misleading statements to the investing public. Diomed maintains its principal place of business in this District in Andover, Massachusetts.

8.  In connection with the acts, transactions and conduct alleged herein. Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of national securities exchanges and markets.

## CLASS ACTION ALLEGATIONS

9.  Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the Class defined above. Excluded from the Class are the defendants, members of the immediate family of any officers or directors of Diomed, any subsidiary or affiliate of Diomed, any of their subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, as well as the legal representatives, heirs, successors and assigns of any excluded person.

10. While the exact number of Class members is unknown and can only be ascertained through appropriate discovery, plaintiffs believe there are thousands of them. Joinder of all Class members is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members individually to redress the wrongs done to them.

11. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Class are:

a)      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b)      whether Defendants engaged in deceptive acts and practices in violation of the federal securities laws;

c)      whether James Arkoosh is a "control person" within the meaning of the federal securities laws;

d)      whether Defendants made false and misleading statements during the Class Period;

e)      whether the market prices of Diomed securities during the Class Period were artificially inflated as a result of the conduct alleged in this complaint; and

f)      whether Plaintiffs and the other members of the Class have sustained damages and, if so, the proper measure of those damages.

12. Plaintiffs' claims are typical of the claims of other Class members. Plaintiff and the other class members sustained damages arising out of Defendants' wrongful conduct.

13. Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

14. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

15. The names and addresses of purchasers of Diomed stock are available from Diomed's transfer agent. Notice can be provided to such record owners via first class mail using techniques and forms of notice similar to those customarily used in class actions.

## THE PARTIES

16. Plaintiffs Kent Garvey, Albert Overhauser, James T. Marsh, Roger E. Buck, and Thomas Loveless, purchased shares of Diomed stock during the Class Period and were damaged thereby. A copy of each of the plaintiffs' certification executed pursuant to the PSLRA is attached to the Amended Complaint.

17. Defendant Diomed Holdings, Inc. is a Delaware corporation with its principal executive office and place of business at 1 Dundee Park, Andover, Massachusetts 01810. Diomed develops and markets products primarily designed for: 1) cancer and pre-cancer treatments using Photo Dynamic Therapy ("PDT") and 2) greater saphenous vein reflux treatment and other clinical applications using Endovenous Laser Treatment ("EVLT"). Diomed was formerly a public shell company known as Natexco Corp. based in Victoria, British Columbia.

18. Defendant James Arkoosh was the Non-Executive Chairman of Diomed Board of Directors at all relevant times herein. As Chairman of Diomed. Arkoosh actively participated in the drafting of Diomed's SEC filings, and press releases, and therefore he knew or was reckless in not knowing of the adverse material information omitted from the SEC filings, press releases and

4

Diomed website. At all relevant times herein, Arkoosh was the Chief Financial Officer and Chief Operating officer of Verus International Holdings, the largest single shareholder of Diomed with 15.2% of Diomed's outstanding stock. In addition, Arkoosh owned personally 131,750 shares of Diomed stock.

19. Defendants are liable, jointly and severally, as direct participants in and co-conspirators of, the wrongs complained of herein.

<h3 style="text-align:center">The Reverse Merger and AMEX Listing</h3>

20. Prior to February 14, 2002, Diomed was a privately held company. With the assistance of Arkoosh, and Verus, Diomed arranged to merge with a publicly traded shell corporation named Netaxco Corp. based in Vancouver.

21. On or about February 14, 2002, Defendants completed a $10.00 million private placement of stock in Diomed (5,000,000 shares at $2.00/share). Simultaneously, Diomed completed a reverse merger with Natexco Corp. a publicly traded shell corporation, with the resulting publicly traded entity being renamed Diomed. Diomed shares immediately began trading on the American Stock Exchange and within days shot up from $2.0 per share to nearly $9.0.

22. The cause of this share price rise was the publication of stock analyst newsletters and an accompanying email campaign that were secretly bought and paid for by Arkoosh, and Diomed.

<h3 style="text-align:center">Manipulation of the Market for Diomed Stock</h3>

23. Beginning in January 2002, Defendants embarked on a plan to artificially inflate the market price of Diomed stock by secretly paying various stock analysts to promote the purchase of Diomed stock without disclosing that such analysts' opinions were bought and paid for by Defendants.

24. The analysts issued a series of highly positive reports bluntly urging investors to purchase Diomed stock, claiming that it would quickly rise to $12.0 or more.

25. The statements made by these stock analysts about the Company were misleading to Plaintiffs and the market because Defendants never disclosed the material fact that the analysts were paid either directly or indirectly by Diomed and Arkoosh to praise and promote Diomed's stock as part of a manipulative and deceptive pump and dump scheme.

26. In early February of 2002, stock analyst Larry H. Abraham released an issue of Insider Report[1] titled "Special Situation Report: Diomed: Portrait of a Biotech Winner," giving Diomed a glowing review and a strong BUY recommendation: "BUY Diomed, Inc. and do it now . . . I can tell you without reservation that the company mentioned earlier, Diomed, Inc. meets every criteria that I have developed and paid dearly to refine. It has the science, the people, the money and a great business model, plus a timeline for profitability that is here and now, not 15 years or even five years from now." Attached as Exhibit A is the February 2002, Larry Abraham Insider Report.

27. Abraham implored investors to purchase Diomed stock with such statements as "I urge my *Insider Report* readers to participate in the Diomed opportunity along with me by contacting their brokers. ... So let me repeat: Buy Diomed (**DIO: Amex**) and do it now."

28. Defendants never disclosed, however, the fact that Larry Abraham had been hired by Diomed and Arkoosh to write the report. This fact is confirmed by the Dow Jones Newswire article dated March 21, 2002 (attached as Exhibit B), in which Abraham had "told Dow Jones

---

[1] The Insider Report was produced by a Florida business called Catalyst Communications ("Catalyst"). Catalyst is identified by Abraham as having received and administered a $700,000 production budget for the report. However, the report does not disclose who actually paid this $700,000 for the publication of the report. Catalyst has been linked to previous illegal securities fraud schemes and at least one of Catalysts' principals has been sanctioned by the SEC. *See infra.*

Newswire that he was approached by Diomed and by Catalyst to write his bullish February report

on the company." The article goes on to state the following:

> In phone interviews, Catalyst's owner Bart Walters said that a total of $700,000
> was spent to hire Larry Abraham, print and produce 800,000 copies of the report
> and send them out to prospective investors. He said that his firm was paid
> directly by Verus International – that's right, the same Verus that's not only a
> major and long-time shareholder of Diomed, but which also since December has
> been advising Diomed at a cost of $15,000 a month.

29. The association between Verus International ("Verus") and Diomed is confirmed by,

among others, Verus's own website, listing Diomed as one of its portfolio companies and listing

the role of Verus as follows:

- Recapitalized balance sheet to support rapid growth and acquisitions.
- Rationalize corporate business plan and operations to support future financings.
- Advised company on RPO transaction raising $10 million.
- Advised on AMEX listing.
- Assisting company with Global M&A and future financings.

30. Furthermore, a direct link between Verus and Diomed is established by the fact that James

Arkoosh, Chairman of Diomed's Board of Directors, also happens to be the Chief Operating

Officer, Chief Financial Officer of Verus and a principal of Verus.[2] In fact, Arkoosh is so

actively involved with Verus that a March 11, 2002 New York Post article by noted financial

journalist Christopher Byron has confirmed that upon telephoning Verus International, "James

Arkoosh came on the line." Attached as Exhibit C is the New York Post article.

31. In addition, the February 14, 2002 Form 8-K SEC filing by Diomed includes a consulting

services agreement showing that a Verus affiliate received an advisory fee of $750,000 upon the

closing of the Merger, which was paid from the proceeds of the $10.00 million private placement

that closed in Mid-February at the time of the reverse merger. Verus also received a consulting

---

[2] http://www.diomedinc.com/News_Events/press%20releases/31-03-01.htm

agreement from Diomed that called for payments of $15,000 per month plus up to another $15,000 per month in expenses for financial advisory services.

32. Diomed's February 14, 2002 Form 8-K SEC filings also show that Diomed entered into a written employment agreement with Arkoosh to serve as Chairman of Diomed in consideration of $50,000 and 50,000 Diomed common shares annually to be paid directly to Verus – not to Arkoosh.

33. Hence, since Arkoosh is the Chief Operating Officer, Chief Financial Officer and a principal of Verus and is also simultaneously the Chairman of Diomed, the Defendants' active participation in this pump and dump stock manipulation is crystal clear. Larry Abrahams stated that he had been "approached by Diomed" to write his February report, it is unmistakably clear that Diomed knowingly and intentionally paid stock analysts to promote its stock to unsuspecting investors.

34. At least three other stock touts were also paid to promote Diomed stock during the Class Period.

35. An investment newsletter called the SmallCap Network Newsletter Digest wrote several glowing reports on Diomed on February 22, 26 and 27, 2002 and March 4 and 13, 2002. Attached as Exhibit D. The SmallCap network disclosed that it was paid $50,000 in cash by Mohammed Patel for writing the reports.

36. An investment newsletter called the OTC Journal Newsletter wrote a series of reports on February 22, 26, 27, and 28, 2004 and March 2, 4, 11, 15, and 23, 2004. One of the OTC Journal newsletters is attached hereto as Exhibit E. All of the reports are available at www.otcjournal.com. The OTC Journal Newsletters disclosed that "MarketByte, LLC has been paid a fee of $100,000 in cash and 250,000 options convertible into free trading shares,

exercisable at $3.50, by Mohammed Patel, an individual, for publishing information on Diomed Corp for a period of one year."

37. According to Christopher Byron, when he called Verus International. Arkoosh came on the line and told Byron that he has no idea who or where Mohamed Patel was – though he did say that he "may have met him casually once or twice." (See Exhibit C, p. 3) Upon information and belief, Mohammed Patel does not exist and is simply a creation of Defendants or is a merely a shill intended to mask Defendants payments to Catalyst and Larry Abraham.

38. An investment newsletter "Stockwatch" also issued a highly positive report on Diomed in February 2002. The report stated that "This Virtually Unknown Medical Company is Poised to make Huge Profits for itself. and for Fortunate Investors Who Get in Early?" According to the Vancouver Sun, the report stated that Stockwatch was paid by Catalyst Communications (Walter's and Kephart's firm), which had been given a marketing budget of $875,000 and options to buy 350,000 shares of Diomed stock from an unidentified "third party group with interests in Diomed to promote the stock." (See Vancouver Sun article attached as Exhibit F).

39. Upon information and belief, this so-called "unidentified third-party group" cited as the sponsor of the Stockwatch newsletter tout refers to none other than Verus and Arkoosh, based on the fact that Catalyst's owner Bart Walters had said in the Dow Jones article mentioned above that his firm was paid directly by Verus for purposes of promoting Diomed stock. Moreover, the $875,000 budget closely matches the $750,000 Verus received from Diomed in the reverse merger, plus the $50,000 annual salary paid to Verus for Arkoosh's work as Chairman and the $15.000 monthly financial consulting contract between Diomed and Verus.

40. The stock promotions outlined above were all paid for by Diomed. Some or all of the payments were made by Diomed through Verus – a major shareholder of Diomed that provides

Diomed with financial advice and assistance pursuant to contract. James Arkoosh, the Chairman of Diomed Board of Directors, is also the COO and CFO of Verus. Defendants had full knowledge of the fact that Diomed had paid for the stock recommendations by Larry Abrahams, Stockwatch, James Stock, and numerous other newsletters.

41. In addition, when Christopher Byron, the New York Post reporter, called Verus and spoke with Arkoosh, he asked Arkoosh who Mohammed Patel was (the sponsor of the OTC Journal and SmallCap Network), Arkoosh replied that "he had no idea who, or where, Mohammed Patel was – though he did say that he 'may have met him casually once or twice.'" (Exhibit C, p. 3). Thus, Arkoosh admits to knowing Patel, even if he did not completely confess to having used Patel as the bagman to funnel the money to OTC Journal and SmallCap Newsletter. Whether or not Patel exists in reality or whether Arkoosh simply made up Mohammed Patel as a convenient alias is a question that can be resolved only through discovery.

42. Diomed and Arkoosh intentionally paid for the unlawful promotion of Diomed stock through third party "shills" Verus and Catalyst Communications in an effort to circumvent the securities laws and hide the origin of the payments. Verus was controlled by its CFO and COO Arkoosh, who was simultaneously the Chairman and major shareholder of Diomed.

43. The fact that Diomed and Arkoosh did not pay Abraham directly, but used Verus and Catalyst as fronts in an attempt to disguise their payments is evidence that they intentionally sought to hide the origins of the payments to the analysts. This underhanded arrangement is evidence of Defendants intentional engagement in deceptive acts and practices with the intention of manipulating the market of Diomed Securities. Moreover, Diomed and Arkoosh knowingly misled investors by failing to disclose in the Descriptive Memorandum and current report filed

with the SEC on February 14, 2000 the fact that Defendants had paid various newsletters to tout Diomed stock.

44. Had the Plaintiffs known that the analysts were being paid by Diomed to praise and promote its products, services, and prospects for growth, they would not have bought or retained Diomed common stock based on such a recommendation. Due to the improper monetary influences imposed upon these analysts by Diomed and Arkoosh, the analysts' reports on Diomed could not be deemed fair and impartial and were in fact misleading and had the effect of manipulating the market price of Diomed stock. Defendants' failure to disclose this material fact intentionally and directly misled Plaintiffs into relying upon the mistaken assumption that the analysts' reports were fair and impartial in purchasing and retaining Diomed stock, for the purpose of causing the stock to be artificially inflated.

45. These misstatements and omissions on the part of Defendants caused the Diomed stock to be artificially inflated up to a high of $9.00 per share during February of 2002, when Diomed made its debut on the AMEX. Since then the stock price has dwindled precipitously, trading at $0.20 per share at the time of the filing of this action.

## ADDITIONAL SCIENTER ALLEGATIONS

46. Diomed and Arkoosh both acted with actual knowledge and intention that their actions would have the effect of manipulating the price of Diomed stock during the class period.

47. Diomed completed a $10.0 million private placement of stock on February 14, 2002 at $2.00 per share. This stock sale relied on a strong market for Diomed securities, without which investors would not have purchased Diomed stock. The misleading and market manipulating newsletters cited above helped create a strong demand for Diomed shares.

48. In February 2002, Arkoosh owned 131,750 Diomed shares, but more importantly, he was COO and CFO of Verus which owned 4.4 million Class A shares (the equivalent of 17.6 million common shares) of Diomed stock or 15.2% of the outstanding shares. Mr. Arkoosh is both a CPA and a lawyer licensed to practice law in Washington State and is a former partner of KPMG LLP.

49. Section 17(b) of the Securities Act of 1933 provides:

> It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or circulate any notice, circular, advertisement, newspaper, article, letter, investment service, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

50. As CPA and corporate lawyer for an international public accounting firm, Arkoosh certainly was aware that conspiring to secretly pay stock analysts to publish highly positive reports and issue buy recommendations was a criminal violation of the securities laws. Defendants' actions were intended to evade compliance with §17(b) in an effort to manipulate the price of Diomed securities.

51. Larry Abraham stated that he was approached by Diomed and Catalyst Communications to write the report on Diomed. Catalysts' owner Bart Walter's stated that he paid $700,000 to Abraham to write the report and disseminate 800,000 copies to investors. Walter's stated that Catalyst was paid directly by Verus International – the same company that Diomed retained as its financial advisor and paid $750,000 pursuant to the merger and the same company that Diomed Chairman James Arkoosh was both COO and CFO of. (See Exhibit B, p.3). In fact, the $700,000 amount paid that Abraham and Catalyst admit receiving closely approximates the $750,000 paid

by Diomed to Verus in the merger on February 14, 2002. The $50,000 difference is likely

Catalysts' fee for acting as the go-between. Counsel for plaintiffs personally contacted Carol

Remond of Dow Jones and verified that all of the statements set forth in the March 21, 2002

article (Exhibit. B) are true and correct.

52. Further evidence of knowing and intentional stock manipulation by Diomed and Arkoosh

is that Catalyst partner Patrick Kephart has been previously charged by the SEC in 1996 for

bribing stock brokers to sell certain securities to their clients. Kephart and his co-defendants were

alleged to have made over $2.6 million in a pump and dump scheme. Attached as Exhibit G is the

SEC litigation release describing the complaint against Kephart. The complaint was later settled

by those defendants by the payment of money. (See Exhibit F).

53. Arkoosh intentionally used Catalyst and the mysterious "Patel" as a go-between or smoke-

screen so that neither Diomed's, Arkoosh's or Verus' names would be disclosed as the sponsors

of the Diomed analyst reports. Arkoosh used these third-parties solely to disguise the true origins

of the payments to the analysts. This attempt to "cover-up" Defendants' tracks evidences

Defendants' knowing and intentional wrongdoing.

54. Arkoosh's intentional violation of §17(b) of the Securities Act, while not a private cause of

action unto itself, is prima facie evidence of Defendants' intention to violate §10(b) of the

Exchange Act and Rule 10b-5.

55. Verus has a history of engineering reverse mergers with shell companies where the

resulting entity stock price immediately increases on heavy demand and then plummets in a

typical pump and dump scenario. (See Exhibit H). These stocks include iParty Corp. (AMEX:

IPT), Emagin Corp. (AMEX: EMA), On2 Technologies (AMEX: ONT), and Refocus Group

(OTCBB: RFCG).  See also, Exhibit C, p. 2-3.  This pattern evidences Arkoosh's scienter as he was COO and CFO of Verus, as well as Chairman of Diomed.

## PROOF OF PLAINTIFFS' RELIANCE

56. Plaintiffs and members of the Class reasonably relied on the misleading statements set forth above in purchasing Diomed Stock during the Class Period.

57. Plaintiffs intend to employ two separate and alternative presumptions of reliance in demonstrating that Plaintiffs have reasonably relied on the misleading SEC filings and press releases in purchasing shares of Diomed stock during the Class Period.

### Applicability Of Affiliated Ute Presumption Of Reliance

58.   Plaintiffs need not prove reliance either individually or as a class because under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery, pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128; 92 S. Ct. 1456; 31 L. Ed. 2d 741; 1972 U.S. LEXIS 163; Fed. Sec. (1972).  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

59. In the alternative, Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

      a)   Defendants made misleading public statements or failed to disclose material facts during the Class Period;

      b)   the omissions and misleading statements were material;

c) the securities of the Company traded in an efficient market;

d) the misleading statements and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

e) Plaintiffs and members of the Class purchased their Diomed securities between the time defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted facts or misleading statements.

60. At all relevant times, the market for Diomed's securities was an efficient market for the following reasons, among others:

(a) Diomed's stock met the requirements for listing, and was listed and actively traded on the American Stock Exchange, an efficient and automated market. During the class period on average approximately 1.6 million shares of Diomed stock were traded on a weekly basis. During the Class Period approximately 14.2 million Diomed shares were outstanding according to the Company's March 22, 2002 10-K filing (unadjusted for a later reverse stock split on). Thus, more than 11.26% of the outstanding Diomed shares were traded on a weekly basis, permitting a very strong presumption of an efficient market;

(b) As a regulated issuer, Diomed filed periodic public reports with the SEC and the NASDAQ and/or NASD;

(c) Diomed regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)  Diomed's stock price reacted quickly in response to material news about the Company;

(e)  Several third party stock analysts and well-known financial reporters issued reports and wrote articles on the Company during the Class Period; and

(G)  A specialist at the American Stock Exchange was assigned to ensure efficient trading of Diomed stock and upon information and belief more than ten registered traders acted as additional market makers in Diomed stock during the Class Period.

61.  As a result of the foregoing, the market for Diomed's securities promptly digested current information regarding Diomed from all publicly available sources and reflected such information in Diomed's stock price. Under these circumstances, all purchasers of Diomed's securities during the Class Period suffered similar injury through their purchase of Diomed's securities at artificially inflated prices and a presumption of reliance applies.

### DEFENDANTS' CONDUCT CAUSED DAMAGE TO INVESTORS

62.  Defendants manipulated the market for Diomed stock causing the market price of the stock to be artificially inflated during the Class Period through the publication of the bogus stock analyst reports that were bought and paid for by Defendants. Plaintiffs paid an artificially high price for Diomed shares during the Class Period. When the fraud was revealed, the price of Diomed shares dropped and continued falling over a period of months, causing plaintiffs to suffer damages as the value of the Diomed shares they purchased declined substantially as a result of Defendants' fraud.

## COUNT I

### AGAINST ALL DEFENDANTS FOR VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 OF THE SECURITIES AND EXCHANGE COMMISSION

63. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. This Count is asserted against Defendants Diomed, and Arkoosh and is based upon Section 10(b) of the 1934 Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

65. During the Class Period. Defendants Diomed and Arkoosh , singly and in concert, directly engaged in a common plan, scheme, and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and courses of business which operated as a fraud and deceit upon plaintiffs and the other members of the Class, and failed to disclose material information in order to make the statements made, in light of the circumstances under which they were made, not misleading to plaintiffs and the other members of the Class. The purpose and effect of said scheme, plan, and unlawful course of conduct was, among other things, to induce plaintiffs and the other members of the Class to purchase Diomed common stock during the Class Period at artificially inflated prices.

66. Throughout the Class Period, Diomed acted through Arkoosh, the Company's Chairman. The willfulness, motive, knowledge, and recklessness of Arkoosh is therefore imputed to Diomed, rendering the Company primarily liable for the securities law violations of these Defendants committed while performing in their official capacity as Company representatives. In the alternative and additionally, Diomed is liable for the acts of Arkoosh under the doctrine of respondeat superior.

67. Defendants had an affirmative duty to disclose fully the truth regarding the misrepresentations and omissions delineated above. Defendants' knowing and intentional failure to do so was a conscious violation of the securities laws.

68. As a result of the failure to disclose material facts, the information that Defendants Diomed and Arkoosh disseminated to the investing public was materially false and misleading as set forth above, and the market price of Diomed common stock was artificially inflated during the Class Period. Plaintiffs and the Class relied on the above-described false and misleading statements in purchasing Diomed shares during the Class Period. In ignorance of the false and misleading nature of the statements described above and the deceptive and manipulative devices and contrivances employed by said Defendants, Plaintiffs and the other members of the Class relied, to their detriment, on the integrity of the market price of the stock in purchasing Diomed common stock. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased said shares or would not have purchased them at the inflated prices that were paid.

69. Plaintiffs and the other members of the Class have suffered substantial damages as a result of the wrongs herein alleged in an amount to be proved at trial.

70. Diomed is directly liable for acts and omissions of Arkoosh under the doctrine of respondeat superior.

71. By reason of the foregoing, Defendants Diomed and Arkoosh directly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes, and artifices to defraud; (b) failed to disclose material information; or (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon plaintiffs and the other members of the Class in connection with their purchases of Diomed common stock during the Class Period.

## COUNT II

### AGAINST ARKOOSH FOR
### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT

72. Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

73. Arkoosh by virtue of his management positions, directorships, stock ownership and/or specific acts described above, was, at the time of the wrongs alleged herein, a controlling person within the meaning of Section 20(a) of the 1934 Act.

74. Arkoosh had the power and influence and exercised the same to cause Diomed to engage in the illegal conduct and practices complained of herein.

75. By reason of the conduct alleged in Count II of the Complaint, Arkoosh is liable for the aforesaid wrongful conduct, and is liable to plaintiffs and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Diomed common stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

a.    Declaring this action to be a proper plaintiff class action maintainable pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs to be proper representatives of the Class;

b.    Awarding Plaintiffs and other members of the Class damages together with interest thereon;

c.    Awarding Plaintiffs and the other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

d.    Awarding Plaintiffs and the members of the Class such other and further relief as may be

just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs hereby demand trial by

jury of all issues.

DATED: September 3, 2004                LAW OFFICES OF SCOTT LOPEZ

_____

Scott Lopez
Law Offices of Scott Lopez
24 School Street, 8th Floor
Boston, Massachusetts 02108
Telephone: (617) 742-5700
Facsimile: (617) 742-5715

Liaison Counsel for Plaintiffs and the Class

Laurence Rosen
The Rosen Law Firm, P.A.
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com

Lead Counsel for Plaintiffs and the Class

# CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Diomed Holdings, Inc., and certain of its officers and directors. The Rosen Law Firm, P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against Diomed Holdings, Inc. and certain of its officers and directors and authorized the filing thereof by the Rosen Law Firm, P.A., whom I retain as counsel in this action for all purposes.

2. I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4. The following is a list of all of the purchases and sales I have made in Diomed Holdings, Inc. common stock since January 1, 2002. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 500 | 3/19/02 | $ 5.19 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

**PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827**

5. I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except for the following company(ies):

6. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5TH day of Nov , 2003.

_____ KENT GARVEY _____
Name (print):

Address: 1122 E. Pike ST #971
Seattle, WA 98122—

Phone: 206 568-1114

Email: KENTgarvey@yahoo.com

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM (212) 202-3827 OR MAIL TO:
THE ROSEN LAW FIRM PA
276 FIFTH AVENUE, SUITE 405
NEW YORK, NY 10001

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Diomed Holdings, Inc., and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the Court in the action.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against Diomed Holdings, Inc. and certain of its officers and directors and authorized the filing thereof by the Rosen Law Firm, P.A., whom I retain as counsel in this action for all purposes.

2. I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4. The following is a list of all of the purchases and sales I have made in Diomed Holdings, Inc. common stock since January 1, 2002. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 1,000 | March 5, 2002 | $7.70 | Nov. 4 2003 | $ 0.30 |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

**PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827**

5. I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___30 $^{th}$___ day of March, 2004.


_Albert Overhauser_

Albert Overhauser

Phone: (765) 494-3037
E-mail: awo @ physics . purdue . edu


Mr. Albert W. Overhauser
236 Pawnee Dr.
W. Lafayette, IN 47906-2115

(765) 463 4662


PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM PA
350 FIFTH AVENUE, SUITE 5508
NEW YORK, NY 10118

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Diomed Holdings, Inc., and certain of its officers and directors. The Rosen Law Firm, P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against Diomed Holdings, Inc. and certain of its officers and directors and authorized the filing thereof by the Rosen Law Firm, P.A., whom I retain as counsel in this action for all purposes.

2. I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4. The following is a list of all of the purchases and sales I have made in Diomed Holdings, Inc. common stock since January 1, 2002. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 100 | 03/11/2002 | $8.00 | | $ |
| 200 | 04/02/2002 | $5.45 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

**PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827**

| | | $ | | $ |
|---|---|---|---|---|
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

5. I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies): NONE

6. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6 (sixth)_ day of _November_, 2003.


Name (print): James T. Marsh

Address: 2600 W. Michigan Ave. Lot 38E
Pensacola, Florida  32526-2282

Phone:    (850) 944-9447

Email:    jtmrsh@yahoo.com

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM (212) 202-3827   OR MAIL TO:
THE ROSEN LAW FIRM PA
276 FIFTH AVENUE, SUITE 405
NEW YORK, NY  10001

# CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Diomed Holdings, Inc., and certain of its officers and directors. The Rosen Law Firm, P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against Diomed Holdings, Inc. and certain of its officers and directors and authorized the filing thereof by the Rosen Law Firm, P.A., whom I retain as counsel in this action for all purposes.

2. I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4. The following is a list of all of the purchases and sales I have made in Diomed Holdings, Inc. common stock since January 1, 2002. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 150 | March 11, 2002 | $7.00 | N/A | N/A |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |
|  |  | $ |  | $ |

**PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827**

5. I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except: for the following company(ies):

6. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __05_ day of _November, 2003.

_____ Roger E. Buck _____
Name (print):

Address: **5435 Cascade Drive**
         **West Bend, WI 53095**

Phone:   **262-675-0169**

Email:   **rbuck64@hotmail.com**

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM (212) 202-3827    OR MAIL TO:
THE ROSEN LAW FIRM PA
276 FIFTH AVENUE, SUITE 405
NEW YORK, NY  10001

## CERTIFICATION

The individual or institution listed below (the "Plaintiff") authorizes the Rosen Law Firm, P.A. to file an action or amend a current action under the federal securities laws to recover damages and to seek other relief against Diomed Holdings, Inc., and certain of its officers and directors. The Rosen Law Firm, P.A. agrees to prosecute the action on a contingent fee basis and will advance all costs and expenses. Any legal fees and expenses will be determined by, and payable, only upon order of the Court in the action.

Plaintiff declares, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint against Diomed Holdings, Inc. and certain of its officers and directors and authorized the filing thereof by the Rosen Law Firm, P.A., whom I retain as counsel in this action for all purposes.

2. I did not engage in transactions in the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3. I am willing to serve as a lead plaintiff either individually or as part of a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial.

4. The following is a list of all of the purchases and sales I have made in Diomed Holdings, Inc. common stock since January 1, 2002. I have made no transactions during the class period in the debt or equity securities that are the subject of this lawsuit except those set forth below.

| Number of Shares Purchased or Sold | Date(s) Purchased | Price Paid Per Share | Date(s) Sold (if applicable) | Price Sold Per Share |
|---|---|---|---|---|
| 100 | March 5, 2002 | $7.31 | | $ |
| 600 | March 7, 2002 | $6.31 | | $ |
| 200 | March 25, 2002 | $4.38 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |
| | | $ | | $ |

**PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM: (212) 202-3827**

| | | $ | | $ |
|---|---|---|---|---|
| | | $ | | $ |

5. I have not, within the three years preceding the date of this certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except for the following company(ies):

6. I will not accept any payment for serving as a representative party beyond my pro rata share of any recovery, except reasonable costs and expenses, such as travel expenses and lost wages directly related to the class representation, as ordered or approved by the court pursuant to law.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 24ᵗʰ day of March, 2004.

Thomas Loveless
11 Lori Lee Drive
Lafayette, IN  47905-4725

Phone:  765-449-7411
E-mail:  thomloveless@hotmail.com

PLEASE FAX CERTIFICATION TO ROSEN LAW FIRM at (212) 202-3827
OR MAIL TO:
THE ROSEN LAW FIRM P.A.
350 FIFTH AVENUE, SUITE 5508
NEW YORK, NY  10118