IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENT GARVEY, ALBERT OVERHAUSER, JAMES T. MARSH, ROGER E. BUCK, and THOMAS LOVELESS, on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JAMES ARKOOSH AND DIOMED HOLDINGS, INC., <br><br> Defendants. | Civil Action No. 1:04CV10438 (RGS) |

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR MOTION TO DISMISS

Defendants Diomed Holdings, Inc. ("Diomed") and James Arkoosh ("Mr. Arkoosh") (collectively "Defendants"), by counsel, state as follows in support of their Motion to Dismiss the Amended Complaint filed by Plaintiffs Kent Garvey, Albert Overhauser, James T. Marsh, Roger E. Buck and Thomas Loveless (collectively, "Plaintiffs").

Plaintiffs, in their Amended Complaint, through improper and unsupported information and belief pleading, allege that Defendants' failure to disclose payments to third-party analysts is a violation of the securities laws. Remarkably, nowhere in their twenty page, seventy-five paragraph Amended Complaint do Plaintiffs allege that Defendants made any misstatements of fact or failed to disclose any facts that they had a duty under the securities laws to disclose. Instead, Plaintiffs would hold an issuer liable under the Securities Exchange Act of 1934 simply for truthful statements made about the issuer by third-parties if the issuer did not disclose a payment to the third-party. There is, however, no legal duty to disclose such payments. And

even if there was such a duty, Plaintiffs have failed to allege the requisite scienter necessary to sustain a securities fraud claim nor have they alleged the necessary legal reliance that is a fundamental element of any securities fraud claim.  Accordingly, the Amended Complaint should be dismissed.

The Amended Complaint should also be dismissed because Plaintiffs have no personal knowledge of any of the facts pled therein.  The entirety of the Amended Complaint is pled on information and belief.  (Amended Complaint, pg. 1) ("AC") ("Plaintiffs … allege upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters….").  Moreover, many of Plaintiffs' specific allegations are improperly pled on information and belief.  Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), pleading on information and belief "is no longer an acceptable approach to pleading." *Lirette v. Shiva Corp.*, 999 F.Supp. 164, 165 (D. Mass. 1998).  A complaint must now "specify facts" upon which the information is based.  *Van Ormer v. Aspen Technology, Inc.*, 145 F.Supp.2d 101, 104 (D. Mass. 2000).  Defendants will, nevertheless, address the totality of Plaintiffs' Amended Complaint to demonstrate that even if the allegations had not been properly based on information and belief, the Amended Complaint still fails as a matter of law.  Accordingly, granting Plaintiffs' leave to amend would be futile.

## Summary of the Argument

Plaintiffs' Amended Complaint should be dismissed for the following reasons:

1.  Defendants had no duty under the securities laws to disclose any alleged payments to third-party analysts.

2.  Plaintiffs fail to allege even a single material misstatement or omission of fact in the analyst reports about which they complain.

3.  Even if Plaintiffs had alleged any material misstatements or omissions of fact on the part of the analysts, Defendants could not be held legally responsible under the First Circuit's "entanglement" test.

4.  The cautionary language or forward-looking statements in the analyst reports negate the materiality of any misstatements or omissions in those reports, had any been alleged.

5.  Plaintiffs allege no facts giving rise to a "strong inference" that Defendants recklessly or intentionally defrauded Diomed stockholders in order to manipulate the market.

6.  Plaintiffs failed to properly allege reliance to sufficiently state a claim under the securities laws.

7.  Plaintiffs failed to state a claim for control person liability.

## Statement of the Case

"The enactment of the PSLRA in 1995 marked a bipartisan effort to curb abuse in private securities lawsuits, particularly the filing of strike suits." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1991). The PSLRA was "designed to enable securities defendants to obtain early dismissal of frivolous class actions, and thereby avoid the high expense of discovery." *Cape Ann Investors LLC v. Lepone*, 296 F.Supp.2d 4, 10 (D. Mass. 2003) (Stearns, J.) Plaintiffs' Amended Complaint is precisely the kind of lawsuit that the PSLRA was designed to prevent.

The gravamen of the Amended Complaint is that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 by "knowingly and intentionally fail[ing] to disclose the fact that Defendants have, either directly or through another party, secretly paid stock analysts to praise and promote Diomed stock in an effort to artificially inflate the market price of Diomed common stock." (AC ¶4).

Significantly, Plaintiffs do not attribute a single misstatement or omission to Defendants or, for that matter, the third-party analysts. In other words, Plaintiffs would ask this Court to

hold Defendants liable under Section 10(b) for allegedly not disclosing payments to third-party

analysts, who published undisputedly true statements about Diomed.  This is not the law.  If it

were, there would be no need for the First Circuit to have adopted the "entanglement test," which

limits the liability of an issuer for statements by third-parties.  The entanglement test only

imputes liability for *false* statements of third-parties when those statements can be "attributed" to

the issuer through "statements made by" the issuer to the analysts.  *Van Ormer*, 145 F.Supp.2d at

107.

But even if Plaintiffs had alleged a material misstatement or omission, and even if they

had alleged sufficient facts to survive the entanglement test, the Amended Complaint would still

fail because of the cautionary language or forward-looking statements contained in each of the

analyst reports attached to the Amended Complaint.[1]

For example, one of the analyst reports contains the following cautionary language:

> [t]he *Insider Report* advises all readers and subscribers to seek advice from a
> registered professional securities representative before deciding to trade in stocks
> featured within this newsletter.  None of the material within this report shall be
> construed as any kind of neither [sic] investment advice nor a solicitation to buy
> or sell any security.  Investing in securities carries a high degree of risk and
> readers of this newsletter are strongly urged to review all information relative to
> the company discussed at the company's website www.diomedinc.com.

(AC, Ex. A.)  Another analyst report states as follows:

> [a]ll statements and expressions are the sole opinions of the editors and are subject to
> change without notice. A profile, description, or other mention of a company in the
> newsletter is neither an offer nor solicitation to buy or sell any securities mentioned.
> While we believe all sources of information to be factual and reliable, in no way do we
> represent or guarantee the accuracy thereof, nor the statements made herein.

(AC, Ex. D.)  In addition, each of the analyst reports attached to the Amended Complaint

disclosed that they contained forward-looking statements.  (AC Exs. A, D-H.)  Under established

precedent of this Circuit, such cautionary language and forward-looking statements negate the

---

[1] For the convenience of the Court, the analyst reports at issue, with the relevant language highlighted, are attached
as Exhibit 1.

materiality of any misstatements or omissions of fact in those reports, had they been alleged. Accordingly, any attempt by Plaintiffs to replead would be futile.

Plaintiffs have also failed to adequately allege scienter. Consistent with the heightened pleading requirements of the PSLRA, Plaintiffs' conclusory allegations of scienter cannot give rise to a "strong inference" that Defendants recklessly or intentionally defrauded Diomed shareholders in order to manipulate the market.

Furthermore, Plaintiffs' Amended Complaint should be dismissed because it fails to properly plead reliance. Plaintiffs' reliance allegations fail because: (a) Plaintiffs have pled no facts giving rise to a presumption of reliance; (b) Defendants had no duty under the securities laws to disclose payments to third-party analysts and, therefore, Plaintiffs could not have relied on an omission by Defendants; (c) Plaintiffs have not otherwise alleged a single misstatement or omission of fact by Defendants or the third-party analysts upon which they could have relied; (d) the forward-looking statements or cautionary language in the analyst reports negate the materiality of any misstatements or omissions contained therein, had any been alleged; and (e) all but one of the named plaintiffs purchased their Diomed stock after the alleged fraud was revealed. Having failed to allege reliance, the Amended Complaint should be dismissed.

For these reasons, Plaintiffs' claim under Section 10(b), as well as their derivative claim against Mr. Arkoosh for controlling person liability under Section 20(a) of the Exchange Act, must fail. In addition, the Section 20(a) claim fails independently of the Section 10(b) claim because (a) Plaintiffs failed to sufficiently allege control and (b) Mr. Arkoosh cannot be held both primarily and secondarily liable under the securities laws for the same conduct.

Ultimately, the Amended Complaint does not have a shred of merit and should have never been filed.  For this reason, Defendants request that the Court dismiss the Amended Complaint with prejudice.

### Statement of Material Facts

On February 14, 2002, Diomed Acquisition Co., a wholly-owned subsidiary of Diomed Holdings, Inc., formerly known as Natexco Corporation, merged with and into Diomed, Inc., a Delaware corporation, pursuant to an Agreement and Plan of Merger dated January 29, 2002 (the "Merger Agreement").  (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Item 5) (Exhibit 2.)[2] The resulting company, hereinafter "Diomed," "provides innovative clinical modalities and specializes in the development and distribution of equipment and disposable items used in minimal and micro-invasive medical procedures."  (*Id.*)

Pursuant to the Merger Agreement, Diomed issued preferred stock to the shareholders of the former Diomed, Inc.  (*Id.*)  These shares represented approximately 51% of the issued and outstanding voting securities of Diomed following the merger.  (*Id.*)  Simultaneously with, and as a condition of, the merger, Diomed also conducted a private placement offering of its common stock.  In the private placement, investors purchased from Diomed an aggregate of five million shares of common stock at $2.00 per share.  (*Id.*)

Prior to the merger, Mr. Arkoosh was Non-Executive Chairman of Diomed, Inc. (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Merger Agreement, Ex. 10.4.).   After the

---

[2] "In deciding a motion to dismiss a securities action, a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment."  *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).  Furthermore, courts may examine information that was publicly available to reasonable investors at the time the alleged misstatements were made, including documents or articles cited in the complaint, SEC filings, press releases and stock price tables. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 617 (4th Cir. 1999) (court considered news article and company proxy statement); *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-59 (9th Cir. 1995) (judicial notice of widespread layoffs at Hughes Aircraft based on a newspaper article).

merger, Mr. Arkoosh retained the same position in the new Diomed. (AC ¶18). Plaintiffs allege that Mr. Arkoosh owned 131,750 shares of Diomed stock.[3] (*Id.*)

Mr. Arkoosh was also Chief Operating Officer and Chief Financial Officer of Verus International Group Limited ("VIGL"). (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Merger Agreement, Ex. 99.1 at pg. 52). As disclosed in Diomed's Form 8-K, VIGL owned approximately 6.95% of Diomed, Inc.'s fully diluted common stock. (*Id.* at pg. 58; Item 5.) On December 21, 2001, Verus Support Services, Inc. ("VSSI"), an affiliate of VIGL, *id.*, confirmed "arrangements under which Verus Support Services Inc. … is engaged by Diomed Inc. … and its successors to act as the Company's financial advisor … post the planned" merger. (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Merger Agreement, Ex. 10.3.) The letter agreement between VSSI and Diomed, Inc., disclosed in Diomed's Form 8-K, provided that VSSI would receive a monthly advisory fee in the amount of $15,000. (*Id.*)

Furthermore, the terms of Mr. Arkoosh's employment with Diomed, also disclosed in the Form 8-K, provided that his salary would be paid directly to VSSI.[4] (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Merger Agreement, Ex. 10.4.).

---

[3] In fact, at the time of the merger, Mr. Arkoosh owned 25,125 shares of preferred stock, convertible into 100,500 shares of common stock, as well as options to purchase up to 100,000 shares of common stock. Mr. Arkoosh did not own any Diomed common stock at the time of the merger. (*See* James Arkoosh SEC Form 3, dated 2/15/02) (Exhibit 3.) Furthermore, on the effective date of Mr. Arkoosh's resignation from the Diomed Board, he retained precisely the same amount of securities as he did on February 15, 2002. (*See* James Arkoosh SEC Form 5, dated 2/2/03) (Exhibit 4.) Plaintiffs, as part of even a cursory investigation prior to filing their Amended Complaint, would have easily discovered these facts by reviewing Defendants' pertinent publicly-filed documents.

[4] Diomed's 8-K disclosed that two separate Verus entities, VIGL and VSSI, owned Diomed stock. (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Merger Agreement, Ex. 99.1 at pg. 58). Plaintiffs allege that "Verus" owned 15.2% of Diomed's outstanding stock, but do not specify to which Verus entity they are referring. (AC ¶18.) Furthermore, Plaintiffs allege that Mr. Arkoosh was COO and CFO of "Verus International Holdings." (*Id.*) These erroneous allegations demonstrate that Plaintiffs made no attempt to review the pertinent publicly-filed documents in this case. As demonstrated by the 8-K, the Verus entity that was engaged by Diomed and to whom Mr. Arkoosh's salary was paid, i.e., VSSI, was not the same entity for which Plaintiffs allege Mr. Arkoosh served as COO and CFO. Moreover, Mr. Arkoosh was not COO and CFO of "Verus International Holdings," but of VIGL, a distinct and separate entity. Had Plaintiffs taken the time to review any of Diomed's publicly-filed documents before filing their lawsuit, they would have easily discovered their errors.

Sometime after the completion of the merger and private placement on February 14, 2002, stock analyst Larry H. Abraham published an issue of Insider Report containing an article titled "Special Situation Report: Diomed: Portrait of a Biotech Winner." (AC ¶26.) Abraham disclosed in his report that he had been paid by Catalyst Communications ("Catalyst") to write the article. (AC ¶26 n.1.) Plaintiffs allege that Defendants paid Abraham to write this article and failed to disclose this fact to investors. (*Id.* ¶28.) Specifically, Plaintiffs allege that Defendants directed "Verus" to pay Catalyst, who then paid Abraham.[5] (*Id.* ¶¶28-33.)

On February 22, 26, 27 and March 4 and 13, 2002, a publication called the SmallCap Network Newsletter Digest issued analyst reports touting Diomed and its stock. (*Id.* ¶35.) In each of these reports, SmallCap Digest disclosed that it had been paid $50,000 by a Mohammed Patel to write these reports. (*Id.*) Another publication, the OTC Journal Newsletter, published similarly favorable reports on February 22, 26, 27 and 28 and March 2, 4, 11, 15 and 23, 2002. (*Id.* ¶36.) Like the SmallCap Digest, OTC also disclosed in each of these reports that Mohammed Patel had compensated it for writing these articles. (*Id.*) Plaintiffs allege, on information and belief, that Mohammed Patel does not exist and that Defendants created him "as a go-between or smokescreen so that neither Diomed's, Arkoosh's or Verus' names would be disclosed as the sponsors of the Diomed analyst reports."[6] (*Id.* ¶53.)

_____

[5] Plaintiffs' support for these allegations is based entirely on information and belief. Plaintiffs believe Defendants paid for the Abraham article because (a) a Dow Jones Newswire quoted Abraham saying that Diomed and Catalyst had approached him to write the article; (b) the same Newswire quoted Catalyst's owner saying that Catalyst was paid directly by "Verus" to write the article; and (c) Arkoosh was COO, CFO and a "principal" of "Verus." (AC ¶¶28-30.) Significantly, it is unclear what Plaintiffs mean by "principal," just as it is unclear whether the Verus entity referred to in the analyst reports is the one alleged in the Amended Complaint. Significantly, nowhere do Plaintiffs allege that it is the same entity. In addition to being improperly based on information and belief, these allegations are also speculative and based on double hearsay.

[6] As will be demonstrated below, the Court need *not* accept these factual allegations as true for purposes of Defendants' Motion to Dismiss. Plaintiffs admit in their Amended Complaint that they have no personal knowledge to support the allegation that Mr. Patel does not exist or, if he does exist, that Defendants used him as a "smokescreen." *See* AC ¶ 41 ("Whether or not Patel exists in reality or whether Arkoosh simply made up

Finally, according to a Vancouver Sun article published on March 20, 2002, another publication called "Stockwatch" also issued a positive report on Diomed in February 2002.[7]  (*Id.* ¶38.)  According to the Sun article, Stockwatch disclosed that it had been paid by Catalyst to write the report, and that Catalyst had been compensated by an unidentified "third-party group with interests in Diomed to promote the stock."  (*Id.*)  Plaintiffs allege, "[u]pon information and belief, this so-called 'unidentified third-party group'" was "none other than Verus and Arkoosh."[8]  (*Id.* ¶39.)

Plaintiffs filed the instant lawsuit on March 3, 2004 alleging that Defendants' failure to disclose payment to the aforementioned analysts constituted violations of the Federal Securities laws.  Plaintiffs filed their Amended Complaint on September 3, 2004.

## Argument

A Rule 12(b)(6) motion to dismiss tests whether a plaintiff's complaint sets forth all of the elements of a cause of action upon which relief can be granted.  While this Court must accept a plaintiff's allegations as true, a complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain a recovery under some actionable theory."  *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 165 (D. Mass. 2000) (Stearns, J.) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir.

---

Mohammed Patel as a convenient alias is a question that can be resolved only through discovery.")  The PSLRA expressly prohibits such speculative and baseless information and belief pleading.  *See Lirette*, 999 F.Supp. at 165.

[7] Plaintiffs did not attach the Stockwatch article to their Amended Complaint and Defendants have been unable to locate a copy.

[8] Again, Plaintiffs' information and belief pleading should be rejected.  Plaintiffs allege that the third-party is "none other than Verus and Arkoosh, based on the fact that Catalyst's owner Bart Walters had said in the Dow Jones article mentioned above that his firm was paid directly by Verus for purposes of promoting Diomed stock."  (AC ¶39.)  It is clear that Plaintiffs possess no personal knowledge about any of the material facts pled in the Amended Complaint.  *See Lirette v. Shiva Corp.*, 27 F.Supp.2d 268, 275 (D. Mass. 1998) ("Pleadings based on information and belief, without specifying the source of the information and the reasons for the belief, do not pass muster under the First Circuit interpretation of Rule 9(b).").

1996)).  "The court may disregard unsupported assertions and bare legal conclusions in its analysis."  *Id.*

The Amended Complaint, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, is subject to the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4 *et seq.* ("The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.").  Section (b)(1)(B) of the PSLRA requires that:

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. §78u-4(b)(1)(B).  Furthermore, Section (b)(2) of the PSLRA provides that:

> [i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.

15 U.S.C. §78u-4(b)(2) (emphasis added).  Thus, "[w]hile under Rule 12(b)(6) all inferences must be drawn in plaintiffs' favor, inferences of scienter do not survive if they are merely reasonable . . . rather, inferences of scienter survive a motion to dismiss only if they are both reasonable and '*strong*' inferences."[9]  *Greebel*, 194 F.3d at 195-96 (emphasis in original).

---

[9] The effect of the PSLRA is to embody in the act itself "at least" the standards of Federal Rule of Civil Procedure 9(b).  *See Greebel*, 194 F.3d at 193.  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  In the securities context, the First Circuit has interpreted Rule 9(b) to require a plaintiff to plead "specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading.  The rule requires that the particular times, dates, places or other details of the alleged fraudulent involvement of the actors be alleged."  *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir. 1994) (citations and internal quotation marks omitted).

Thus, the PSLRA provides that "the court *shall*, on the motion of any defendant, dismiss the complaint if the [pleading] requirements of paragraphs (1) and (2) are not met."  15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

**I.  Plaintiff's Amended Complaint Fails To State A Claim Under Section 10(b) Of The Securities Exchange Act Of 1934.**

In order to state a claim under Section 10(b) of the Exchange Act, a plaintiff is required to plead with particularity that a defendant (1) made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages.  *In re Sepracor, Inc. Sec. Litig.*, 308 F.Supp.2d 20, 27 (D. Mass. 2004). A fact is material if there is a "substantial likelihood 'that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'"  *Id.* (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

"Scienter" has been defined by the Supreme Court as "a mental state embracing intent to deceive, manipulate or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). While a plaintiff can state a claim under Section 10(b) by alleging recklessness, "recklessness" in the Section 10(b) context "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence."  *Greebel*, 194 F.3d at 199 (quoting *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 793 (7th Cir. 1977)).  Thus, in order to survive a motion to dismiss, a plaintiff must allege, with the particularity required by the PSLRA, conduct that is at least "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it."  *Id.* at 198 (quoting *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977)).

Instead of pleading facts giving rise to any inference of scienter, Plaintiffs resort to unsupported information and belief pleading, double hearsay or both.  For example, Plaintiffs allege "[u]pon information and belief, this so-called 'unidentified third-party group' cited as the sponsor of the Stockwatch newsletter tout refers to none other than Verus and Arkoosh, based on the fact that Catalyst's owner Bart Walters had said in the Dow Jones article mentioned above that his firm was paid directly by Verus for purposes of promoting Diomed stock."  (AC ¶39.)  In other words, Plaintiffs hope to stake a securities fraud claim on an unsubstantiated guess "verified" by double hearsay from a Dow Jones newspaper article without alleging that Defendants uttered a false statement or omitted a fact that they had a duty under the securities laws to disclose.  Surely these are not the kind of "facts" that could possibly give rise to a "strong inference" that Defendants intended to manipulate the market.[10]  *See In re Galileo Corp. Shareholders Litig.*, 127 F.Supp.2d 251, 269 (D. Mass. 2001) (stating that conclusory allegations of scienter unsupported by specific facts are insufficient to state a claim under Section 10(b)).

### A.    There Is No Duty Under The Securities Laws To Disclose Payments To Third-Party Analysts.

The gravamen of the Amended Complaint is that Defendants "knowingly and intentionally failed to disclose the fact that Defendants have, either directly or through another party, secretly paid stock analysts to praise and promote Diomed stock in an effort to artificially

---

[10] The Amended Complaint is laden with conclusory and unsubstantiated assertions of fact.  For example, Plaintiffs allege that Defendants "intentionally paid for the unlawful promotion of Diomed stock through third party 'shills' Verus and Catalyst Communications in an effort to circumvent the securities laws and hide the origin of the payments."  (AC ¶42.)  Plaintiffs have created this allegation from whole cloth and admit as much when they plead "*[u]pon information and belief*" that the so-called "shill" "does not exist and is simply a creation of Defendants … to mask Defendants['] payments" to the third-party analysts.  (AC ¶37) (emphasis added).  There are no facts supporting this allegation – only supposition and speculation.  Plaintiffs' allegation that they should be entitled to discovery so they can determine whether the "shill" exists is expressly prohibited by the PSLRA.  (AC ¶41.)

inflate the market price of Diomed common stock." (AC, ¶4). Even assuming that this allegation is true[11], the Amended Complaint fails to state a claim.

Section 10(b) "does not create an affirmative duty of disclosure." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir. 1996) (stating that "a corporation does not commit securities fraud merely by failing to disclose all nonpublic material information in its possession"). Indeed, a corporation must have a duty to disclose under the securities laws before it can be found liable for violating those laws. *Id.* "[A] duty to disclose arises only when the issuer has made a statement of material fact that is either false, inaccurate, incomplete, or misleading in light of the undisclosed information."[12] *In re Boston Tech., Inc. Sec. Litig.*, 8 F.Supp.2d 43, 53 (D. Mass. 1998) (citations omitted). Plaintiffs' Amended Complaint is utterly devoid of any allegations supporting the existence of a duty on the part of an issuer to disclose the engagement of third-party analysts because there is no authority, legal or otherwise, supporting the proposition that this conduct violates the securities laws.

Plaintiffs, of course, do not allege that the analysts claimed to be free of a conflict of interest or that they were offering independent analyses about Diomed or its stock for the simple

---

[11] Defendants deny this allegation in its entirety and assume its truth only for purposes of their Motion.

[12] The First Circuit has listed two other situations in which the securities laws impose a duty to disclose – neither of which are applicable here. These situations include: (1) when an insider trades in the company's securities on the basis of material nonpublic information; and (2) when a statute or regulation mandates disclosure. *Gross*, 93 F.3d at 992. Obviously, the Amended Complaint contains no allegations of insider trading and Plaintiffs have cited no statute or regulation imposing a duty on an issuer to disclose payment to third-party analysts. Plaintiffs' reliance on Section 17(b) of the Securities Act of 1933 is totally unavailing. (AC ¶¶49, 54.) That statute provides that "[i]t shall be unlawful for any person … *to publish, give publicity to, or circulate any ... article ...* which … describes such security for a consideration received or to be received … without fully disclosing the receipt … of such consideration and the amount thereof." 15 U.S.C. 77q(b) (emphasis added). On its face, this statute does not govern the conduct of an issuer. *See* Harold S. Bloomenthal & Samuel Wolff, *Securities and Federal Corporate Law*, §23.89 (2004) (stating that "[f]inancial writers and others receiving consideration to recommend a security would be subject to" Section 17(b)); *U.S. v. Amick*, 439 F.2d 351, 364-65 (7th Cir. 1971) (holding that a jury could properly find defendant guilty of violating Section 17(b) by "publish[ing] the article in return for the promise of payment"). Indeed, Plaintiffs do not allege that Defendants published anything. And even if Plaintiffs had alleged such facts, there is no private right of action for violation of Section 17(b). (AC ¶54.) *See also Ostler v. Codman Research Group, Inc.*, 1999 WL 1059684, at *4 (D. N.H. April 20, 1999) (holding that "a private right of action is not implied by section 17(b)").

reason that the analysts affirmatively disclosed that they had been compensated for their services. For example, the Abraham report disclosed that:

> [t]he distribution of this newsletter report on Diomed to current and potential new subscribers was funded at a cost of approximately $700,000.  Catalyst Communications received and administered this production budget….  Larry Abraham and his publisher expect to receive new subscriber revenue as a result of this mailing, the amount of which is unknown at the time of publication. *Beware of an inherent conflict of interest resulting from such compensation.*

(AC Ex. A) (emphasis added.)  Similarly, SmallCap Digest disclosed that "TGR Group LLC has been paid a fee of $50,000 in cash a by Mohammed Patel, an individual, for publishing information on Diomed Corp for a period of one year."  (AC Exs. D-G).  Likewise, OTC Journal Newsletter disclosed that "MarketByte LLC has been paid a fee of $100,000 in cash and 250,000 options convertible into free trading shares, exercisable at $3.50, by the Mohammed Patel [sic], an individual, for publishing information on Diomed Corp [sic] for a period of one year."  (AC Ex. H.)  Accordingly, Plaintiffs were fully aware that the analysts were being compensated by someone with an interest in promoting Diomed and its stock and, therefore, could not, as a matter of law, have relied on those analyst reports to their detriment.

### B.     Plaintiffs Failed To Allege That Defendants Made Any Statements To The Third-Party Analysts Or That The Analyst Reports Contain Any False Statements of Material Fact.

Plaintiffs do not attribute a single misstatement or omission to Defendants.  They do not attribute any misstatements or omissions to the third-party analysts.  Instead, they attempt to state a claim under Section 10(b) simply by alleging that Diomed, Mr. Arkoosh, and/or "Verus" paid third-party analysts to write reports about Diomed and failed to disclose the payment.  In other words, Plaintiffs attempt to hold a corporation liable under Section 10(b) for undeniably truthful statements by third-parties where the corporation does not disclose that it compensated those third-parties for the coverage.  This is not the law.  *See Capri Optics Profit Sharing v. Digital*

*Equip. Corp.*, 950 F.2d 5, 9-10 (1st Cir. 1991) (stating that "indisputably true, and wholly true" statements are not actionable); *see also In re Sepracor, Inc.*, 308 F.Supp.2d at 27 (stating that a false statement or omission is a material element of a claim under Section 10(b)).

The First Circuit has adopted the "entanglement test" for determining whether a party can be held liable for the statements of third-party analysts.  Under this test:

> [l]iability may attach to an analyst's statements where the defendants have *expressly or impliedly adopted the statements, placed their imprimatur on the statements, or have otherwise entangled themselves with the analysts to a significant degree*.... [T]he court will determine whether the complaint contains allegations which, favorably construed and viewed in the context of the entire pleading, could establish a significant and specific, not merely a casual or speculative, entanglement between the defendants and the analysts with respect to the statements at issue.

*In re Cabletron Sys., Inc.*, 311 F.3d 11, 37-38 (1st Cir. 2002) (quoting *Schaffer v. Timberland Co.*, 924 F. Supp. 1298, 1310 (D. N.H. 1996)) (emphasis added).  "[A]n entanglement claim will be rejected if it merely suggests or assumes that company insiders provided the information on which analysts … based their reports."  *Id.* at 38.  Indeed, statements by analysts are not actionable unless they can be "attributed to defendants" through "statements made by defendants" to the analysts.  *Van Ormer*, 145 F.Supp.2d at 107.

The nature of the entanglement required to survive dismissal is demonstrated by this Court's decision in *In re Number Nine Visual Tech. Corp. Sec. Litig.*, 51 F.Supp.2d 1 (D. Mass. 1999).  In that case, the plaintiffs argued that their identification of "specific documents and information" provided to the analysts and a "pattern of continuous interactions" among Number Nine and the analysts was sufficient to survive the entanglement test.  *Id.* at 31.  This Court disagreed.  First, this Court held that merely identifying categories of documents that analysts relied upon did not satisfy the requirement that plaintiffs "allege with particularity the time, place, content and speaker of the company's communications with the analysts, and explain why

the communications were fraudulent." *Id.* (quoting *Lirette*, 27 F.Supp.2d at 280).  Second, this Court held that plaintiffs' allegation of a "pattern of continuous interactions" failed to satisfy the rigorous pleading standards of Rule 9(b).  *Id.*  ("If plaintiffs could clear the Rule 9(b) hurdle simply by injecting general allegations of 'a pattern of continuous interactions,' the cynical acid of Rule 9(b) would be so diluted as to lose its force.").

Moreover, the heightened pleading requirements of the PSLRA and Federal Rule of Civil Procedure 9(b), apply to allegations that a company made misrepresentations through an analyst. *Guerra v. Teradyne Inc.*, No. 01-11789-NG, 2004 WL 1467065, at \*22 (D. Mass. Jan. 16, 2004) (citing *In re Number Nine*, 51 F.Supp.2d at 30-31 (D. Mass. 1999)) (Rule 9(b)); *see also In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1237 (N.D. Cal. 1994) (same); *Greebel*, 194 F.3d at 193 (PSLRA).  As a result, Plaintiffs were required to "allege with particularity the time, place, content, and speaker of the issuer's communications with the analysts, and explain why the communications were fraudulent."  *In re Boston Tech.*, 8 F.Supp.2d at 55; *see also Suna v. Bailey Corp*, 107 F.3d 64, 73-74 (1st Cir. 1997) (affirming dismissal based on the entanglement test for failure to "describe how … statements were false or misleading"); *Greebel*, 194 F.3d at 193 (holding that the PSLRA requires a plaintiff to (a) allege the time, place and content of the alleged misrepresentations with specificity; (b) identify the speaker; (c) state when and where the statements were made; and (d) explain *why* each statement was fraudulent).  The Amended Complaint contains no such allegations and accordingly fails as a matter of law.

Nevertheless, even if Plaintiffs had alleged that the analyst reports contained a material misstatement or omission of fact, Plaintiffs do not allege that Defendants (a) distributed the analyst reports; (b) supplied any information for the reports; (c) edited or otherwise reviewed the content of the reports before they were published; (d) consulted with the analysts about the

content of the reports; or (e) approved of, or otherwise expressed comfort with, the content of the

reports.  At a minimum, these factual allegations are required if Plaintiffs intend to plead a cause

of action.  *See In re Number Nine*, 51 F.Supp.2d at 31 (allegations that defendants provided

numerous documents to analysts and had a "pattern of continuous interactions" with the analysts

are insufficient to state a claim under the securities laws).

Plaintiffs have not alleged a single fact showing that Defendants placed their

"imprimatur" on any of the analyst reports or that Defendants expressly or impliedly adopted the

statements as their own.  Instead, Plaintiffs provide only a laundry list of conclusory, conspiracy-

laden allegations regarding who might have *paid* for the analyst reports.  In this case, Plaintiffs

have made no attempt to plead even conclusory facts like the ones alleged in *Number Nine*.  The

Amended Complaint alleges nothing more than a failure to disclose payment.

In the absence of any allegations (a) tying the substance of the analyst reports to

Defendants and (b) that the reports themselves were false or misleading, the Amended Complaint

fails as a matter of law.[13]

### C.    The Cautionary Language Or Forward-Looking Statements In The Analyst Reports Negate The Materiality Of Any Misstatements Or Omissions In Those Reports, Had Any Been Alleged.

Each of the analyst reports contains forward-looking statements and cautionary language

that negates the materiality of any false statements or omissions in those reports, if they exist at

all.

Courts in the First Circuit have declined to impose liability for forward looking

statements, i.e., "broad statements that express optimism about a company's future – because

these courts regard such statements as unlikely, as a matter of law, to be material to a reasonable

---

[13] Had actionable misstatements or omissions in the analyst reports existed, Plaintiffs would have alleged them. Accordingly, Plaintiffs should not be given the opportunity to replead.

investor." *In re Stone & Webster, Inc. Sec. Litig.*, 253 F.Supp.2d 102, 117 (D. Mass. 2003)

(quoting *Carney v. Cambridge Tech. Partners, Inc.*, 135 F.Supp.2d 235, 245 (D. Mass. 2001)).

Forward-looking statements are not actionable if one of the following three conditions is met: (1)

the statement is identified as forward-looking and "accompanied by meaningful cautionary

statements identifying important factors that could cause actual results to differ materially from

those in the forward-looking statement"; (2) the statement is "immaterial"; or (3) the plaintiff

does not plead that the statement was made with actual knowledge that the statement was false or

misleading. *In re Sepracor, Inc.*, 308 F.Supp.2d at 27 (quoting 15 U.S.C. § 78u-5(c)). A

plaintiff is required to show that defendant "*actually knew* – and was not simply reckless in not

knowing – that these statements were untrue." *In re Stone & Webster, Inc.*, 253 F.Supp.2d at

117 (emphasis in original).

Each of the analyst reports attached to the Amended Complaint disclosed that they

contained forward-looking statements. (AC Exs. A, D-H.) For example, the Abraham article,

upon which Plaintiffs rely so heavily, states:

> [i]nformation within this newsletter contains "forward looking statements" within
> the meaning of Section 27A of the Securities Act of 1933 and Section 21B of the
> Securities Exchange Act of 1934. Any statements that express or involve
> discussions with respect to predictions, expectations, beliefs, plans, projections,
> objectives, goals, assumptions or future events or performance are not statements
> of historical fact and may be "forward looking statements" …

(AC Ex. A.)[14] Because Plaintiffs have failed to plead that any of the analyst reports contained

false statements, they have, of course, failed to plead any facts showing that Defendants knew

these statements were false when uttered. *In re Stone & Webster, Inc.*, 253 F.Supp.2d at 117.

---

[14] The Abraham article includes the following forward-looking statements:

> [l]et's not mince any words. I am going to give you the bottom line right up front and then
> explain why. If you act on it, you have made an excellent investment decision that is going to
> make you a lot of money. BUY Diomed, Inc. and do it now.

In addition, "[w]here a forecast or prediction is accompanied by cautionary disclosures that adequately warn that things may turn out differently, it is, as a matter of law, not materially misleading" so long as the "cautionary language … [is] sufficiently related in subject matter and strong in tone to counter the statement made." *In re Boston Tech, Inc.*, 8 F.Supp.2d at 53 (defining the "bespeaks caution" doctrine).

All of the analyst reports attached to the Amended Complaint disclosed the nature of the report and the risks to investors who might choose to rely on them. For example, the SmallCap Digest article attached as Exhibit D to the Amended Complaint stated:

> [a]ll statements and expressions are the sole opinions of the editors and are subject to change without notice. A profile, description, or other mention of a company in the newsletter is neither an offer nor solicitation to buy or sell any securities mentioned. While we believe all sources of information to be factual and reliable, in no way do we represent or guarantee the accuracy thereof, nor the statements made herein.

(AC, Ex. D.) Abraham also urged investors to review all of the publicly available information about Diomed:

> [i]nvesting in securities carries a high degree of risk and readers of this newsletter are strongly urged to review all information relative to the company discussed at the company's website www.diomedinc.com. Further, readers are urged to review disclosure documents and public filings relating to Diomed at the EDGAR section of the Securities and Exchange Commission Website www.sec.gov and at the American Stock Exchange website at www.amex.com....  All factual information in this report was gathered from sources believed to be reliable but *Insider Report* can make no guarantee as to its accuracy or completeness, it should be considered advertising and for informational purposes only. Use of the material within this newsletter constitutes your acceptance of these terms.

(AC Ex. A)

---

> I can tell you without reservation that … Diomed, Inc. meets every criteria that I have developed and paid dearly to refine.  It has the science, the people, the money and a great business model, plus a timeline for profitability that is here and now, not 15 years or even five years from now.

(AC Ex. A.).

The cautionary and forward-looking statements above would extinguish any potential liability Defendants might have even if Plaintiffs had alleged any misstatements or omissions in those reports.  Accordingly, because granting Plaintiffs leave to replead would be futile, this Court should dismiss the Amended Complaint with prejudice.

> **D.     Plaintiffs' Conclusory Allegations Of Scienter Do Not Give Rise To A "Strong Inference" That Defendants Recklessly Or Intentionally Defrauded Shareholders And Manipulated The Market.**

All of the so-called scienter allegations in the Amended Complaint speak only to Defendants' alleged failure to disclose the payments to the third-party analysts.  Plaintiffs fail to allege, however, any particularized facts giving rise to any inference that Defendants (or the analysts themselves) recklessly or intentionally made a misstatement or omission of fact.  As a result of this basic pleading failure, the Amended Complaint should be dismissed.  *See In re Boston Tech., Inc.*, 8 F.Supp.2d at 55 ("As with any claim of fraud in the securities context, the plaintiff relying on an analyst statement must allege facts giving rise to a strong inference of fraudulent intent."); *see also* 15 U.S.C. §78u-4(b)(2) (requiring a complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

And even if there was a duty to disclose payment to third-party analysts, Plaintiffs did not allege a single fact showing that Defendants did so "as part of a manipulative and deceptive pump and dump scheme."  (AC ¶25.)  Plaintiffs allege that Mr. Arkoosh owned 131,750 shares of Diomed stock.[15]  (AC ¶18.)  While the merger was completed on February 14, 2002, the registration statement for Diomed's stock (including shares of common stock into which the preferred stock held by Mr. Arkoosh and others would become convertible) did not become

---

[15] This figure is incorrect, but for purposes of the Motion to Dismiss, Defendants will assume the truth of Plaintiffs' allegation.  *See supra* Footnote 3.

effective until October 24, 2002.  (Diomed Final Prospectus, Form 424B3, filed 10/30/02.)

Under Section 5(c) of the Securities Act of 1933, as further explained by SEC Rule 144, it is

unlawful for any person "to offer to sell …any security, unless a registration statement has been

filed."  15 U.S.C. §77e; *see also* 17 C.F.R. §230.144 (defining exceptions to general rule of

Section 5(c)).  Notably, Plaintiffs do not allege that Mr. Arkoosh violated Section 5(c), nor do

they allege that Mr. Arkoosh sold his stock at all.

In fact, Plaintiffs fail to disclose that Mr. Arkoosh did not sell any of his shares during

that period, and, in fact, could not have sold them because they were unregistered and restricted

preferred stock.  (Diomed Holdings, Inc. Form 8-K, dated 2/14/2002, Merger Agreement, Ex.

4.2.).  Attached as Exhibits 3 & 4 are publicly-filed SEC documents that disclose Mr. Arkoosh's

stock ownership at the time of the merger and at the time of his resignation from the Diomed

Board.  These documents demonstrate conclusively that Mr. Arkoosh did not sell his stock as part

of a "pump and dump scheme."  Had Plaintiffs bothered to review these publicly-filed

documents, they would have learned that their entire lawsuit was based on a false premise.

None of Plaintiffs' self-titled "Additional Scienter Allegations" are sufficient to withstand

a motion to dismiss, individually or collectively.  A few examples suffice to show the emptiness

of Plaintiffs' "additional" allegations:

- Plaintiffs' argument that the analyst reports "helped create a strong demand
  for Diomed shares" in connection with the private placement is a verifiable
  falsehood.  (AC ¶47.)  All of the analyst reports alleged in the Amended
  Complaint were published *after* the private placement was completed on
  February 14, 2004.[16]  Therefore, these reports, or the alleged failure to
  disclose payment for these reports, could not have had any impact on those
  individuals who participated in the private placement.  Again, had Plaintiffs
  performed even a cursory investigation of Diomed's pertinent publicly-filed
  documents, they easily could have discovered their error.

---

[16] While the Abraham article is dated "February 2002," it discloses that Diomed's stock was already trading on the
American Stock Exchange at the time of publication.  Plaintiffs do not and cannot allege that Diomed's stock was
traded on the AMEX prior to February 14, 2002.

- Plaintiffs' assertion that the *alleged* violation by Defendants of Section 17(b) of the Securities Act of 1933 is "prima facie evidence" of Defendants' intention to violate Section 10(b) is transparent bootstrapping. (AC ¶¶49, 54.) An allegation is not evidence. The PSLRA was designed to prevent this kind of baseless pleading.[17]

- Plaintiffs' attempt to use Verus' "history of engineering reverse mergers" as evidence of Mr. Arkoosh's scienter is also insufficient. (AC ¶55.) Reverse mergers were in 2002, and are now, an accepted method of going public.[18] Plaintiffs do not allege otherwise. Moreover, Plaintiffs do not allege (a) which Verus entities were involved in the specified transactions; (b) that Mr. Arkoosh was associated with the Verus entities involved in the specified transactions; (c) that the listed Verus transactions involved the same misdeeds as alleged in the Amended Complaint; or (d) that Mr. Arkoosh had any involvement in those transactions. For these reasons, this allegation does not support scienter.

- In Paragraph 51, Plaintiffs recite the method in which they believe Defendants paid for the Abraham article. These allegations – which even if true do not give rise to a securities law violation – were allegedly "verified" when Plaintiffs' counsel called a reporter who had written a news article on the subject in March 2002. Oddly, however, Plaintiffs' counsel did not attach an affidavit or declaration swearing to this fact nor did he file a verified Amended Complaint. In any event, Plaintiffs' baseless allegations cannot be evidence of scienter.

- Mr. Arkoosh's status as an accountant and lawyer cannot, as a matter of law, be a basis for scienter either. (AC ¶¶48, 50.) Moreover, Plaintiffs' reference to Mr. Arkoosh's "conspiring" to secretly pay analysts is unsupported by any facts in the Amended Complaint and is insufficient to state a claim under the securities laws. *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (stating that "in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met"). And, as stated above, failure to disclose payment to third-party analysts does not violate the securities laws.

---

[17] Plaintiffs concede that there is no private right of action for violation of Section 17(b). (AC ¶54.) *See also Ostler*, 1999 WL 1059684, at *4 (holding that "a private right of action is not implied by section 17(b)"). Moreover, Section 17(b) does not apply to Diomed or Mr. Arkoosh under the facts alleged by Plaintiffs. That statute covers only actions by people who "publish, give publicity to, or circulate any … article" without disclosing consideration. 15 U.S.C. § 77q(b); *see also supra* Footnote 12. Plaintiffs have not alleged that Mr. Arkoosh or Diomed published, publicized or circulated anything.

[18] In fact, the SEC has proposed an amendment to Form 8-K that would specifically require a publicly-held shell company upon merging with a private operating company to file a Form 8-K. *See* Use of Form S-8 and Form 8-K by Shell Companies, Release Nos. 33-8407, 34-49566 (April 15, 2004) (Exhibit 5). Plaintiffs cannot raise the spectre of scienter by calling into question the viability of reverse mergers when the SEC itself is in the process of amending its forms to further accommodate them.

The remainder of Plaintiffs' so-called "additional scienter allegations" are filled with inflammatory and unsupported facts that have no bearing on this lawsuit.  For example, Plaintiffs attempt to allege scienter by noting that a partner in the company that paid for the Abraham article was in 1996 "*alleged* to have made over $2.6 million in a pump and dump scheme."  (AC ¶52) (emphasis added.)  But Plaintiffs do not explain how eight-year old allegations against an individual in a company that was allegedly paid by "Verus" to write an article about Diomed translates to liability for Diomed and Mr. Arkoosh under Section 10(b).

The total lack of scienter allegations coupled with the absence of a duty under the securities laws to disclose payments to third-party analysts exposes the Amended Complaint as a classic "strike suit" that is devoid of any factual or legal basis.  The PSLRA was designed to put a halt to such suits at the pleading stage.  *See Fitzer v. Security Dynamics Technologies*, 119 F.Supp.2d 12, 18 (D. Mass. 2000) (stating that the PSLRA did "away with the kind of lawsuit that happens because a [company's] stock drops, a suit is filed, they press discovery and they move and collect a large settlement from the company, when the suit may be baseless").  In this case, Plaintiffs' failure to plead any facts giving rise to a strong inference of scienter mandates dismissal under the PSLRA.

### E.    Count I Must Be Dismissed Because Plaintiffs Failed To Adequately Allege Reliance.

Plaintiffs assert two separate and alternative presumptions of reliance to state a claim under the securities laws.  First, Plaintiffs allege that the *Affiliated Ute* presumption of reliance applies because this case involves "primarily a failure to disclose."  (AC ¶58.)  Second, Plaintiffs allege that the "fraud-on-the-market" presumption of reliance applies because "Defendants made misleading public statements or failed to disclose material facts during the Class Period" and because Diomed's securities were traded on an efficient market.  (*Id.* ¶59.)  Alternatively,

Plaintiffs allege that "Plaintiffs and members of the Class reasonably relied on the misleading statements set forth above in purchasing Diomed Stock during the Class Period."  (*Id.* ¶56.)

Neither of the presumptions relied upon by Plaintiffs are applicable here.  The *Affiliated Ute* presumption is not applicable because, as demonstrated above, Defendants had no duty under the securities laws to disclose that it paid third-party analysts.  *See Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-54 (1972) (in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery").

Plaintiffs cannot avail themselves of the "fraud-on-the-market" theory either.  This theory is based on Plaintiffs' conclusory and factually unsupported allegation that "Defendants made misleading public statements or failed to disclose material facts during the Class Period" and that those "omissions and misleading statements were material."  (AC ¶¶59-60.)  However, Plaintiffs fail to allege that Defendants made any misstatements of fact or omitted any facts that they had a duty to disclose.  Plaintiffs also fail to allege that any of the analysts' statements were false or misleading or that Defendants could be held liable for their statements.  Accordingly, the Court need not reach the issue of whether Diomed stock was traded on an efficient market.  Plaintiffs, by their own allegations, have pled themselves out of court.

Without the benefits of either presumption, Plaintiffs must have properly alleged reliance in order to state a claim under Section 10(b).  Plaintiffs allege that had they "known that the analysts were being paid by Diomed to praise and promote its products, services, and prospects for growth, they would not have bought or retained Diomed common stock based on such a recommendation."  (AC ¶ 44.)  This argument fails because Defendants had no duty under the securities laws to disclose to Plaintiffs that they paid the analysts.  In the absence of such a duty, actionable reliance could not have existed as a matter of law.

Moreover, if Plaintiffs relied on anyone, they relied on the *analysts* – not Defendants. Because Plaintiffs have pled no facts that survive the First Circuit's entanglement test, Plaintiffs' reliance on any alleged misstatements or omissions by the analysts (which have not been alleged) may not be imputed to Defendants.[19]  In addition, the forward-looking statements and cautionary language in each of the analyst reports extinguish Plaintiffs' ability to assert that they relied on the contents of those reports to their detriment.

Finally, Plaintiffs allege that the so-called fraud was revealed no later than March 11, 2002, when a New York Post article allegedly exposed the fraud to the investing public for the first time.  (AC Ex. C.)  As a result, the Amended Complaint must be dismissed as to Plaintiffs Marsh, Buck and Garvey because each of these individuals purchased their Diomed stock at the time of, or soon after, the alleged fraud was revealed.  Plaintiff Loveless, despite purchasing stock for the first time on March 5, 2002, also purchased stock on March 25, 2002, weeks after the alleged fraud was revealed.  For this reason, these Plaintiffs could not have relied on any misrepresentations or omissions of Defendants as a matter of law.[20]  *See Zucker v. Sasaki*, 963 F.Supp. 301, 307 (S.D.N.Y. 1997) (rejecting presumption of reliance when plaintiff "did not purchase her shares between the time the alleged misrepresentations were made and the time the truth was revealed"); *see also Basic, Inc.*, 485 U.S. at 248-49 ("Similarly, if, despite petitioner's allegedly fraudulent attempt to manipulate the market price, news of the merger discussions credibly entered the market and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud.").

---

[19] As stated above, each of the analyst reports relied upon by Plaintiffs in their Amended Complaint disclosed that they were being compensated for their services and had a personal interest in Diomed.

[20] Accordingly, even if the Court determines that either or both of the presumptions alleged by Plaintiffs apply, it should still dismiss the Amended Complaint as pled by Plaintiffs Loveless, Marsh, Buck and Garvey.

Because Plaintiffs have failed to properly allege the material element of reliance, the

Amended Complaint should be dismissed.

## II.    Plaintiff's Complaint Fails To State A Claim Under Section 20(a) Of The Securities Exchange Act Of 1934.

Section 20(a) of the Securities Exchange Act of 1934 states as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. §78t(a).  Plaintiffs' claims against Mr. Arkoosh under this statute fail for several

reasons.

### A.    Count II Must Be Dismissed Because Plaintiff Failed To Allege A Violation of Section 10(b).

Because Plaintiffs have failed to allege a primary violation of Section 10(b), their

derivative claim against Mr. Arkoosh fails as a matter of law.  *See Suna*, 107 F.3d at 72.  For this

reason alone, Count II must be dismissed.

### B.    Count II Must Be Dismissed Because Plaintiff Failed To Allege Control.

The controlling person claims against Mr. Arkoosh must also be dismissed because

Plaintiffs failed to plead that he "controlled" Diomed within the meaning of the Exchange Act.

"To meet the control element, the alleged controlling person must not only have the general

power to control the company, but must also actually exercise control over the company."

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 85 (1st Cir. 2002).  In the securities context, "control

… means the possession, direct or indirect, of the power to direct or cause the direction of the

management and policies of a person, whether through the ownership of voting securities, by

contract, or otherwise."  17 C.F.R. §230.405.  Plaintiffs have pled no facts showing that Mr.

Arkoosh was a controlling person and, in fact, have pled facts tending to show that Mr. Arkoosh *did not* have the capacity to control Diomed.

Plaintiffs allege that Mr. Arkoosh "was the *Non-Executive* Chairman of [the] Diomed Board of Directors at all relevant times herein." (AC ¶18) (emphasis added.) As a non-executive member of the board of directors, Arkoosh had "no direct control over the management and operations of the company." *Aldridge*, 284 F.3d at 85. Mr. Arkoosh was one of six members of Diomed's Board during the class period and had no independent power to control the company as a matter of law. *See In re Lernout & Hauspie Sec. Litig.*, 286 B.R. 33, 43 (Bankr. D. Mass. 2002) (holding that one's "status as a director is not enough to meet the threshold pleading requirements for a § 20(a) claim").

More importantly, Plaintiffs have no personal knowledge that Mr. Arkoosh actually exercised control over Diomed. They admit as much when they state that the entirety of the Amended Complaint is pled on information and belief. (AC, pg. 1.) Consistent with the heightened pleading requirements of the PSLRA, Plaintiffs cannot state a claim under Section 20(a) based upon a guess of what Mr. Arkoosh might have done or not done. *See* 15 U.S.C. §78u-4(a)(1) ("The provisions of this subsection shall apply in each private action arising under this chapter that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."). For this reason, Plaintiffs' Section 20(a) claim fails.

Plaintiffs also allege that Mr. Arkoosh owned 131,750 shares of Diomed stock.[21] (AC ¶18.) This fact, taken as true, does not give rise to Section 20(a) liability either. Plaintiffs do not and cannot allege that Mr. Arkoosh was a "controlling shareholder." Mr. Arkoosh's 131,750 shares represented .0045% of Diomed's outstanding stock on a fully diluted basis. (Diomed Holdings, Inc. Form 10-KSB, dated 3/29/2002, Part II, Item 5 at pg. 31) (Exhibit 6) (stating that

---

[21] As discussed above, this allegation is contradicted by the publicly-filed documents in this case.

Diomed had 28,965,690 shares of common stock on a fully diluted basis subsequent to the merger and completion of the private placement.)  Accordingly, Mr. Arkoosh could not have been a controlling shareholder as a matter of law.  *See In re Gupta*, 900 F. Supp. at 1243 (holding that a corporation's "position as a minority shareholder … with an agent on the board does not establish control person liability").

Ultimately, Mr. Arkoosh was a minority stockholder and a member of Diomed's Board with no more power to control Diomed than any other director.  For this reason, Count II should be dismissed.

C. **Count II Must Be Dismissed Because Defendant Arkoosh Cannot Be Both Primarily and Secondarily Liable For Violations Of The Exchange Act**

Finally, Plaintiffs' Section 20(a) claim against Mr. Arkoosh should be dismissed because it seeks to hold him primarily and secondarily liable for the same conduct.  *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 697 n.4 (6th Cir. 2004); *In re Capstead Mortgage Corp. Sec. Litig.*, 258 F.Supp.2d 533, 566 (N.D. Tex. 2003); *Lemmer v. Nu-Kote Holding, Inc.*, 2001 WL 1112577, at *12 (N.D. Tex. Sept. 6, 2001); *Kalnit v. Eichler*, 85 F.Supp.2d 232, 246 (S.D.N.Y. 1999).  Accordingly, to the extent Mr. Arkoosh's conduct is actionable (and it is not), Plaintiffs should be entitled to only one recovery for his conduct.  For this additional reason, Count II should be dismissed.

**Conclusion**

Plaintiffs have failed to attribute a single misstatement or omission of fact to Defendants.  Instead, Plaintiffs use unsupported information and belief pleading to argue that Defendants' failure to disclose payments to third-party analysts is a violation of the securities laws.  It is not.  Under Plaintiffs' theory of the case, an issuer could be liable for the truthful statements of third-parties simply for not disclosing a payment to the third-party for coverage of the company.  This

theory is directly contrary to the law of this Circuit which holds that an issuer can be liable for statements of third parties *only* when (a) those *false* statements can be "attributed" to the issuer through (b) "statements made by" the issuer. *Van Ormer*, 145 F.Supp.2d at 107.

And even if there was such a duty, Plaintiffs have failed to allege the requisite scienter necessary to sustain a securities fraud claim nor have they alleged the necessary legal reliance that is a fundamental element of any securities fraud claim. For these reasons, Defendants respectfully request that the Court dismiss this lawsuit with prejudice.

Respectfully submitted,

JAMES ARKOOSH and
DIOMED HOLDINGS, INC.

By Counsel

/s/ James J. Foster
James Foster (BBO #553285)
jfoster@wolfgreenfield.com
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617.646.8000 (phone)
617.646.8646 (fax)

Of Counsel:

Charles Wm. McIntyre (VSB# 27480)
McGuireWoods LLP
Washington Square
1050 Connecticut Avenue, N.W., Suite 1200
Washington D.C. 20036
202.857.1742 (phone)
202.828.2967 (fax)

Brian E. Pumphrey (VSB# 47312)
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
804.775.7745 (phone)
804.698.2018 (fax)

Counsel for Defendants